■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SALVATORE DICARLO, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARGUERITE DICARLO, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ESERAC REALTY CORP., Appellant. [741 NYS2d 508] —Judgments, Supreme Court, New York County (Joan Sudolnik, J.), rendered July 8, 1999, convicting defendants, after a jury trial, of grand larceny in the second degree, six counts of criminal possession of a forged instrument in the second degree and 48 counts of offering a false instrument for filing in the first degree, and sentencing defendants Salvatore and Marguerite DiCarlo to terms of 1 to 3 years, conditional discharges and fines of $5,000, sentencing defendant Eserac Realty to a conditional discharge and a fine of $10,000, and ordering each defendant to pay restitution in the amount of $81,045, unanimously affirmed. The matter is remitted to Supreme Court, New York County, for further proceedings pursuant to CPL 460.50 (5).

The verdict was based on legally sufficient evidence. The evidence at trial established that defendants intended to deprive the School Construction Authority (SCA) of property or appropriate the same to themselves, and wrongfully obtained such property, in an amount exceeding the statutory threshold of $50,000 (*see, People v Robinson*, 60 NY2d 982). Through the use of forged documents and other fraudulent devices, defendants inflated the cost of renovating a building, thereby obtaining reimbursement in excess of their contractual entitlement.

The court's restitution determination did not render the

verdict "inconsistent" or the evidence legally insufficient. The restitution hearing was not part of the trial, but was a different proceeding before a different fact-finder, addressing different issues (*see,* Penal Law § 60.27 [2]; CPL 400.30 [4]). In any event, the jury's verdict and the court's restitution order can be reconciled.

Although the restitution order would evince a loss to SCA of less than $50,000 in the event that defendants pay off certain outstanding liens on the building, the fact that, in such event, SCA would ultimately lose less than the statutory amount does not negate the sufficiency of the trial evidence as to the grand larceny in the second degree count. The court's restitution determination as to the amount defendants presently owe the victim does not negate the amount defendants originally stole from that victim. The trial evidence established a completed asportation of the funds with larcenous intent, even if the taking were to be viewed as temporary (*see, People v Ponnapula,* 266 AD2d 32, *lv denied* 94 NY2d 951). Furthermore, although payment of the outstanding liens may bring the amount taken from SCA below the statutory threshold, it is evident that defendants had no intention of paying many, if any, of these outstanding liens but for the instant criminal prosecution.

The evidence of SCA's reliance on the fraudulent invoices submitted by defendants is also legally sufficient. When paying reimbursements to defendants, SCA relied on the "letter of instruction" sent by the Board of Education (BOE) representative, authorizing payment. In turn, that representative relied on the submissions of invoices, etc. by defendants. The element of reliance was satisfied by evidence that SCA relied on an agent who was induced by defendants' misrepresentations to recommend payment (*see, People v Termotto,* 81 NY2d 1008). Moreover, the fact that the BOE representative did not check to confirm the accuracy of the invoices does not evince a lack of reliance. On the contrary, it evinces total, albeit misplaced, reliance on defendants' honesty.

On the record before us, we find that defendants received meaningful representation (*see, People v Benevento,* 91 NY2d 708, 713-714). Legitimate trial strategies and tactics can explain the challenged actions of trial counsel, and mere losing tactics do not constitute ineffective assistance of counsel (*see, People v Henry,* 95 NY2d 563, 565). For example, it was perfectly reasonable for counsel to choose not to cross-examine the BOE representative who negotiated the contract with defendants, as to do so might simply have given him an opportunity to deny more forcefully that the contract was a lump

sum contract for which the invoices would have been irrelevant, as defendants asserted, as opposed to a contract merely calling for reimbursements of actual expenses up to a stated amount. Defense counsel presented this defense through other witnesses who testified that the BOE representative had agreed to such a lump sum contract. Furthermore, it was unreasonable to expect that the BOE representative would break down and admit that he did not rely on the invoices. More likely, he would have emphasized his complete reliance on defendants' honesty.

Defendants' respective assertions that counsel should have more forcefully emphasized specific financial points at trial, as they did at the restitution hearing, are unpersuasive. Counsel did, in fact, make each of the points that defendants assert should have been made at trial, but the jury simply rejected them. The decisions by trial counsel to use defendant Marguerite DiCarlo and a "professional quantity surveyor" to present the lump-sum-contract defense and to establish that the cost of the project exceeded the amount paid by SCA were reasonable but unsuccessful trial strategies.

We perceive no basis for a reduction of sentence. Concur— Mazzarelli, J.P., Andrias, Saxe, Wallach and Marlow, JJ.