[960 NE2d 377, 936 NYS2d 608]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JUAN MEDINA, Appellant.

Argued October 11, 2011; decided November 17, 2011

## POINTS OF COUNSEL

*Cahill Gordon & Reindel LLP*, New York City (*Noah H. Bishoff* of counsel), and *Legal Aid Society, Criminal Appeals Bureau* (*Steven Banks* and *Andrew C. Fine* of counsel) for appellant. I. The trial court's refusal to define "deprive" and "appropriate" constituted an insufficient charge on the element of intent, which was a primary focus of appellant's defense and the subject

of repeated juror inquiry, and thus deprived appellant of his due process right to a fair trial. (*People v Blacknall*, 63 NY2d 912; *People v Guzman*, 68 AD2d 58; *People v Davis*, 269 AD2d 463; *People v Zambuto*, 93 AD2d 873; *People v Albanese*, 88 AD2d 603; *People v Johnson*, 75 AD2d 585.) II. The trial court's refusal to declare a mistrial or conduct an inquiry despite multiple deadlock notices and lengthy deliberations deprived appellant of his due process right to a fair trial. (*Matter of Plummer v Rothwax*, 63 NY2d 243; *People v Peterson*, 273 AD2d 88; *People v Santana*, 260 AD2d 187; *People v Campbell*, 203 AD2d 127; *Matter of Guido v Berkman*, 116 AD2d 439; *People v Reed*, 230 AD2d 866; *People v Sheldon*, 136 AD2d 761; *People v Aponte*, 2 NY3d 304; *People v Pagan*, 45 NY2d 725; *United States v Seawell*, 550 F2d 1159.)

*Robert T. Johnson, District Attorney*, Bronx (*T. Charles Won, Joseph N. Ferdenzi* and *Karen Swiger* of counsel), for respondent. I. There was overwhelming evidence of defendant's guilt of robbery in the first degree. II. By failing to specifically request that the trial court define the terms "deprive" and "appropriate," defendant failed to preserve his claim that the court's definition of robbery was incorrect; nevertheless, the facts of the case did not require that the terms be defined. (*People v Hawkins*, 11 NY3d 484; *People v Gray*, 86 NY2d 10; *People v Michael*, 48 NY2d 1; *People v Stephens*, 84 NY2d 990; *People v Mosley*, 67 NY2d 985; *People v Slacks*, 90 NY2d 850; *People v Drake*, 7 NY3d 28; *People v Blacknall*, 63 NY2d 912; *People v Rayam*, 94 NY2d 557; *People v Crimmins*, 36 NY2d 230.) III. The trial court's responses to the jury notes indicating either that it was deadlocked or that some of the jurors refused to deliberate were balanced and noncoercive, and the court exercised proper discretion in issuing supplemental instructions and not declaring a mistrial. (*People v Santiago*, 52 NY2d 865; *People v Autry*, 75 NY2d 836; *People v Baptiste*, 72 NY2d 356; *People v Stephens*, 84 NY2d 990; *Matter of Plummer v Rothwax*, 63 NY2d 243; *People v Alvarez*, 86 NY2d 761; *People v Campos*, 239 AD2d 185; *People v Bonilla*, 225 AD2d 330; *People v Aponte*, 2 NY3d 304; *United States v Seawell*, 550 F2d 1159.)

### OPINION OF THE COURT

Chief Judge LIPPMAN.

The question before the Court in this appeal from a first-degree robbery conviction is whether the trial court's failure to charge the jury with the statutory definition of "appropriate"

and/or "deprive," which forms part of the definition of larcenous intent, is reversible error. We hold that it is.

The Appellate Division, although reducing the sentence, upheld the first-degree robbery conviction, finding the claimed omission from the jury charge unpreserved, and in any event non-prejudicial (67 AD3d 548 [1st Dept 2009]). A Judge of this Court granted defendant leave to appeal (15 NY3d 776 [2010]) and we now reverse.

On November 23, 2004, defendant, a paid informant for the Drug Enforcement Administration (DEA),[1] participated in an unauthorized break-in at the home that Jose Oleaga shared with his wife Jenny Pena and their two daughters. Defendant was accompanied by another man and a woman. When the three arrived at the front door of the home, the woman stood in front of the peephole and requested to see the person who rented apartments. Pena, who rented apartments, instructed Oleaga to open the door and he did so. Defendant and the other man then entered the apartment and Oleaga immediately fled, followed by the man who had accompanied defendant to the apartment. Defendant, who was now in the apartment alone with Pena and her children, told Pena to lie down so that he could tie her up. However, when Pena informed him that her children were at home, he instructed her to proceed to where the children were. As they walked through the apartment, Pena observed defendant take her cell phone from a computer desk. When they reached the master bedroom where they found one of Pena's daughters, Pena informed defendant that her other daughter was in another bedroom. They went into the daughter's bedroom where Pena and defendant had a conversation. During that time, defendant repeatedly said "I am your friend," and again told Pena to lie down so that he could tie her up. She refused to lie down and defendant told her to sit down. He then left the apartment. Meanwhile, Oleaga flagged down a police car and the police searched for, but were unable to find, the man who had chased him. Minutes later, the police returned to the apartment building and observed defendant still in the area.

Defendant told police officers that he was a DEA informant and was trying to stop a robbery. A police officer asked defendant

1. On September 29, 2004, defendant became a paid informant for the DEA. In order to become an informant, defendant signed an agreement which contained provisions prohibiting him from participating in unauthorized criminal activity. The agreement was to last until September 29, 2005. However, defendant was deactivated after the events which led to his conviction in this case.

if he had anything that he should not have and defendant replied that he was carrying a gun in his right jacket pocket. The officer then searched defendant and found in defendant's jacket pockets an unloaded gun, two bullets, a roll of duct tape, a pair of rubber gloves, and three cell phones. It was later discovered that one of the cell phones belonged to defendant and the others belonged to Oleaga and Pena. Although they did not agree on the exact amount, both Pena and Oleaga later claimed that several thousand dollars were missing from a drawer in their bedroom. No cash was recovered from defendant upon his arrest.

Defendant was placed into the car of a second police officer. Defendant attracted the attention of that officer, who had not yet entered the car, by banging his head against the car window and the two had a conversation. The officer testified that defendant told him that "they" had come to defendant's house, asked him if he wanted to make some money, and when defendant replied in the affirmative, handed defendant a gun in order to commit a robbery. Defendant reported that a white Suburban and a Ford Taurus were involved in the robbery and that a person named Nelson had given him the gun. A Ford Taurus, containing rubber gloves and a handgun, was recovered at the scene. Police gave defendant permission to call Nelson Guerrero and defendant attempted to do so. Prior to this incident, defendant had informed on Guerrero to the DEA and had turned over drugs to the DEA that he had obtained from Guerrero.

At the police precinct, a third officer interviewed defendant and drove defendant to the location where defendant told him the robbery had been planned. Defendant showed the officer Guerrero's home and the business owned by Guerrero's mother. From information provided by defendant, police were able to identify the other people involved in the robbery.

Defendant was indicted on 17 counts, including two counts of robbery in the first degree, burglary in the first and third degrees, and attempted burglary in the second degree.

As is relevant here,

> "[a] person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . .
>
> "[i]s armed with a deadly weapon; or . . .

"[d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm" (Penal Law § 160.15 [2], [4]).

In order to sustain a conviction for robbery in the first degree the People must establish that defendant had the requisite intent—that is, larcenous intent. Larcenous intent means the "intent to deprive another of property or to appropriate the same to himself or to a third person" (Penal Law § 155.05 [1]).

Following the presentation of evidence, the jury embarked on lengthy deliberations before returning a verdict on the fifth day. The jury sent several notes to the court over the course of the five days of deliberations indicating that the jurors were having difficulty understanding the meaning of intent and resolving whether defendant had the requisite intent. On three separate occasions, including on the day the verdict was returned, the jury sent notes to the court evincing that it did not understand the meaning of intent. In one note (sent on the fourth day of deliberations) the jury stated "2 jurors do not beli[e]ve beyond a reasonable doubt that [defendant's] intent was to committ [*sic*] a crime." Defendant was convicted of first-degree robbery but acquitted of first-degree burglary.

■ On appeal, defendant challenges the court's failure to instruct the jury on the statutory definitions of the terms "deprive" and "appropriate" as they relate to the meaning of larcenous intent. We are not persuaded by the People's argument that defendant did not preserve for this Court's review the challenge to the jury instruction.

> "For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an 'exception' but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in re[s]ponse to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of

the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered." (CPL 470.05 [2].)

We have held that "in order to preserve a claim of error in . . . a charge to the jury, a defendant must make his or her position known to the court" and "that the argument [must] be 'specifically directed' at the alleged error" (*People v Gray*, 86 NY2d 10, 19 [1995]).

We hold that defendant's challenge to the jury charge was preserved. At trial, defendant's counsel expressed concern that the jury might not understand the meaning of the phrase "[a]ppropriated for himself" and requested a particular charge as to intent with regard to that phrase, which the court rejected. We find this to be sufficient to preserve the issue for our review because the definition of the term goes directly to the question of the permanency of the taking and the requisite intent.

■ In evaluating a challenged jury instruction, we view the charge as a whole in order to determine whether a claimed deficiency in the jury charge requires reversal (*see People v Umali*, 10 NY3d 417, 426-427 [2008] [holding that "(o)ur task in evaluating a challenge to jury instructions is not limited to the appropriateness of a single remark; instead, we review the context and content of the entire charge"]). We will not disturb a jury verdict even where a "single sentence of the charge, when read in isolation, 'was improper and should not have been used' " so long as the "court's charge, taken as a whole, conveyed to the jury the correct standard" (*People v Drake*, 7 NY3d 28, 32 [2006], quoting *People v Fields*, 87 NY2d 821, 823 [1995] [emphasis omitted]). Because we review a misstatement or omission in a jury instruction in the context in which it was made, we cannot say that in all cases a court's failure to provide requested statutory definitions constitutes reversible error. Rather, we hold that in this case, given the omission of the definition of "appropriate" and/or "deprive," the instruction did not adequately convey the meaning of intent to the jury and instead created a great likelihood of confusion such that the degree of precision required for a jury charge was not met.

In *People v Blacknall* (63 NY2d 912, 913 [1984]), an attempted larceny case, we held that the "[f]ailure of the Trial Judge to include in the jury charge, as requested, the statutory definitions of 'deprive' and 'appropriate,' " which form part of the

definition of larcenous intent, constituted reversible error. We expressed concern that based on the facts in that case the court's omission of definitions of "appropriate" and "deprive" "could have misled the jury into thinking that any withholding, permanent or temporary, constituted larceny" (*id.* at 914 [internal quotation marks, citation and emphasis omitted]).[2] We also find persuasive that, "[a]s one commentator has noted, the concepts of 'deprive' and 'appropriate' . . . 'are *essential to a definition of larcenous intent*,' " and they " 'connote a purpose . . . to exert *permanent or virtually permanent control over the property* taken, or to cause *permanent or virtually permanent loss* to the owner of the possession and use thereof" (*People v Jennings*, 69 NY2d 103, 118 [1986] [emphasis added], quoting Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 155.00, at 103 [1975 ed]). At the heart of the intent issue, with which the jury evidently struggled, is whether defendant intended to permanently deprive the victims of the property taken from them.

While we recognize that there are cases in which the court's omission of the definition of a term or terms may constitute harmless error, we find that under the circumstances present in this case, the error was not harmless. The unusual nature of defendant's behavior, coupled with the notes sent during deliberations evincing the jury's confusion concerning the meaning of intent, is pertinent to the harmless error analysis. We have recognized that there are dangers inherent in "intrud[ing] into the jury's deliberative process by speculating on how the jury perceived and weighed the evidence" (*People v Rayam*, 94 NY2d 557, 561 [2000] [internal quotation marks and citation omitted]). However, in this case, no such speculation is necessary as the jury's confusion concerning the concept of intent is evident

---

**2.** "To 'deprive' another of property means (a) to withhold it or cause it to be withheld from him permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to him, or (b) to dispose of the property in such manner or under such circumstances as to render it unlikely that an owner will recover such property" (Penal Law § 155.00 [3]).

"To 'appropriate' property of another to oneself or a third person means (a) to exercise control over it, or to aid a third person to exercise control over it, permanently or for so extended a period or under such circumstances as to acquire the major portion of its economic value or benefit, or (b) to dispose of the property for the benefit of oneself or a third person" (Penal Law § 155.00 [4]).

from its own messages to the court during deliberations. Taken together with the facts underlying the conviction in this case, we find that the jury notes provide a clear basis for our conclusion that the court's failure to define "appropriate" and/or "deprive" was not harmless.

In view of the foregoing, we need not reach the other issue raised by defendant on this appeal.

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order reversed, etc.