**IN THE**

# United States Court of Appeals

# For the Second Circuit

_____

AUGUST TERM, 2020

ARGUED: NOVEMBER 23, 2020
DECIDED: JUNE 7, 2021

No. 19-4111

ANDY PABEL FERREIRAS VELOZ, AKA ANDY FERREIRAS,

*Petitioner,*

*v.*

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,

*Respondent.*\*

_____

On Petition for Review of a Final Decision of the Board of Immigration Appeals.

No. A061-308-478.

_____

Before: CALABRESI, KATZMANN, and SULLIVAN *Circuit Judges.*

_____

_____

\* The Clerk of Court is directed to amend the caption as set forth above.

Petitioner Andy Ferreiras seeks review of a final order of removal from the Board of Immigration Appeals ("BIA"). The BIA found Petitioner removable as a non-citizen convicted of two or more crimes involving moral turpitude based on its determination that New York petit larceny constitutes such a crime. The Court of Appeals, (Calabresi, *J.*) certifies to the New York State Court of Appeals the question of whether an intent to "appropriate" property under New York Penal Law § 155.00(4)(b) requires an intent to deprive the owner of his or her property either permanently or under circumstances where the owner's property rights are substantially eroded.

Judge Sullivan dissents in a separate opinion.

————————————

ADAM AMIR & NOAH A. LEVINE, Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY, *for Petitioner.*

ETHAN P. DAVIS, Acting Assistant Attorney General – Civil Division (Cindy S. Ferrier, Assistant Director, Sarai M. Aldana, Trial Attorney, Office of Immigration Litigation, Civil Division, Department of Justice), Washington, D.C., *for Respondent-Appellee.*

————————————

2

CALABRESI, *Circuit Judge*:

This case requires us to determine whether the intent provision of New York's larceny statute is a categorical match with the Board of Immigration Appeals ("BIA") definition of the intent required for crimes involving moral turpitude ("CIMTs") under 8 U.S.C. § 1227(a)(2)(A)(ii). Petitioner Andy Ferreiras seeks review of a BIA order finding him removable based on convictions for three CIMTs. Ferreiras argues that none of his crimes of conviction, all three of which were for petit larceny, are CIMTs. He contends that the New York statute encompasses a broader set of larcenous intents than the BIA's definition of CIMTs.

Since 2016, the BIA has defined a theft crime as a CIMT when it includes the intent to deprive owners of their property "either permanently or under circumstances where the owner's property rights are substantially eroded." *Matter of Diaz-Lizarraga*, 26 I. & N. Dec. 847, 853 (BIA 2016). Using the categorical approach in Petitioner Ferreiras's case, the BIA ruled that the intent requirement for larceny in New York Penal Law ("NYPL") is a categorical match with the BIA's CIMT definition.

Ferreiras argues that this was error. Under New York law, larceny requires the intent either to "deprive" someone of their property or to "appropriate" the

property of another. NYPL § 155.05(1). Ferreiras maintains that the definition of "appropriate" in the statute makes the definition of larceny under New York law broader than the BIA's definition of a CIMT, and that therefore these definitions are not a categorical match. Ferreiras points out that NYPL § 155.00(4)(b) includes under the term "appropriate" the intent "to dispose of the property for the benefit of oneself or a third person." He contends that because this provision does not include a temporal limitation, the statute makes criminal even minimal takings that are not covered by the BIA's definition of a CIMT.

We do not doubt that the *Diaz-Lizarraga* rule applies to Ferreiras. We have, however, left open the question of whether New York petit larceny constitutes a CIMT under that standard. *See Obeya v. Sessions*, 884 F.3d 442, 445 n.1 (2d Cir. 2018). The BIA has said that it does. *See Matter of Obeya*, 26 I & N Dec. 856 (BIA 2016). But we owe no deference to the BIA's reading of New York law. *See Gill v. I.N.S.*, 420 F.3d 82, 89 (2d Cir. 2005). The issue before us is therefore: what does the New York statute require, and does reading the statute or the relevant New York cases make us sufficiently sure of that requirement?

Since examination of that statute and those cases leaves us uncertain, we believe it is prudent to ask the New York State Court of Appeals ("NYCA") how

it would interpret § 155.00(4)(b). We therefore certify to the NYCA the question whether an intent to "appropriate" property under New York Penal Law § 155.00(4)(b) requires an intent to deprive the owner of his or her property either permanently or under circumstances where the owner's property rights are substantially eroded, which, as noted earlier, is how the BIA defines a theft involving moral turpitude.

## BACKGROUND

Andy Ferreiras is a native and citizen of the Dominican Republic who became a lawful permanent resident of the United States in 2011. Before he was detained by the Department of Homeland Security ("DHS"), he worked in the restaurant industry and as a barber in the Bronx. In 2017, Ferreiras pleaded guilty to three separate charges of petit larceny under NYPL § 155.25. On July 3, 2019, an Immigration Judge applied the categorical approach, and found him removable as a non-citizen convicted of two or more CIMTs pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii). Ferreiras appealed to the BIA, arguing that the intent provision of New York's larceny statute encompasses takings intended to neither permanently nor substantially erode property rights, making it broader than the

5

federal definition. *See* NYPL § 155.00(4)(b). The BIA found Ferreiras's argument precluded by *Matter of Diaz-Lizarraga* and *Matter of Obeya*.

Ferreiras timely petitioned for review before our Court.[1] He argues again that New York petit larceny is not a CIMT under the categorical approach because its plain language encompasses thefts with less culpable intent than the *Diaz-Lizarraga* rule requires.

## STANDARD OF REVIEW

Our jurisdiction over Ferreiras's petition for review is limited to "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D). Whether New York's petit larceny statute qualifies as a CIMT is a question of law. Accordingly, we review *de novo. See Gill*, 420 F.3d at 89.

## DISCUSSION

Finding a categorical match is a tricky business. We must determine whether state law permits convictions for crimes that would not be CIMTs under the appropriate federal definition. *See Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013)

---

[1] Submissions from the parties indicate that DHS removed Ferreiras to the Dominican Republic in May of 2020.

(explaining the categorical approach); *Matthews v. Barr*, 927 F.3d 606, 616-617 (2d Cir. 2019) (applying categorical approach to New York's child endangerment law). We therefore begin with the federal definition. In that respect, we pay due deference to the BIA's delegated authority to define a CIMT, and its expertise in doing so. *See Gill* 420 F.3d at 89 ("Because the BIA has expertise applying and construing immigration law, we afford *Chevron* deference to its construction of undefined statutory terms such as 'moral turpitude.'"). As recited above, the BIA defines a theft as a CIMT where it involves "an intent to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded." *Diaz-Lizarraga*, 26 I. & N. Dec. at 853.

But we do not owe the BIA deference when it interprets state law, because it is not an expert in state law.[2] *See Mendez v. Mukasey*, 547 F.3d 345, 346 (2d Cir. 2008) ("[W]e owe no deference to the BIA's construction of state criminal statutes."); *Rodriguez v. Gonzales*, 451 F.3d 60, 63 (2d Cir. 2006). Instead, we give full deference to the state. *See e.g.*, *Gill*, 420 F.3d at 90 (relying on New York state

---

[2] For this reason, we do not defer to the BIA's interpretation of NYPL § 155.00 in *Matter of Obeya*, 26 I & N Dec. 856 (BIA 2016).

court interpretation of its own criminal laws when applying the categorical approach to CIMTs).

This core principle of federalism is especially important in situations like this one, where the need to ascertain state law is required by federal law, and where litigants who are incarcerated or have been deported may be able to seek a reopening of their case even many years later should our decision as to state law prove to be wrong. Consider what might happen if we found that the statute is a match, and a few years later the NYCA defined it as clearly not a match. What would happen if a petitioner then sought habeas or similar relief? Certification allows us to avoid precisely such potential problems.

In order to apply the categorical approach, we must "identify the minimum criminal conduct necessary for conviction under a particular statute by looking only to the statutory definitions—i.e., the elements—of the offense, and not to the particular underlying facts.'" *Hylton v. Sessions*, 897 F.3d 57, 60 (2d Cir. 2018) (quoting *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018)). Our inquiry therefore begins with the statute and its plain language.

Under New York penal law, "[a] person is guilty of petit larceny when he steals property." NYPL § 155.25. Stealing property requires either the intent to

"deprive another of property," or the intent "to appropriate the same to himself or to a third person." NYPL § 155.05(1). To "deprive" another of property is defined as "(a) to withhold it . . . permanently or for so extended a period . . . that the major portion of its economic value or benefit is lost to him, or (b) to dispose of the property in such manner . . . as to render it unlikely that an owner will recover such property." NYPL § 155.00(3). To "appropriate" property means "(a) to exercise control over it . . . permanently or for so extended a period . . . as to acquire the major portion of its economic value or benefit, or (b) to dispose of the property for the benefit of oneself or a third person." NYPL § 155.00(4).

Thus, NYPL § 155.00(4)(a) clearly coheres with the federal requirement for a CIMT. The crux of Ferreiras's argument is, however, that § 155.00(4)(b)'s intent "to dispose of the property for the benefit of oneself or a third person," is a less culpable mental state than the *Diaz-Lizarraga* definition. He argues that this intent could be as minimal as joyriding, or stealing something with the intent of putting it back the next day.

Ferreiras contends, moreover, that the intent requirement in the larceny statute is so manifestly broader than the *Diaz-Lizarraga* rule that we need not, and indeed cannot, look any further. In making this argument, he relies principally on

*Hylton*, where we held that the BIA erred in looking beyond the clear language of a statute "when the statutory language itself, rather than the application of legal imagination to that language, creates the realistic probability that a state would apply the statute to conduct beyond the generic definition." 897 F.3d at 63 (citations omitted). We are however, not persuaded that the meaning of this statute is so plain that we can simply rely on its language.

What the statute makes criminal depends on the meaning of "dispose" in NYPL § 155.00(4)(b), for that is the sub-section of the statute that does not have any explicit temporal limitations. Does it mean, as Ferreiras thinks obvious, something like "use," so that a temporary theft clearly falls within the statute's ambit? Or, does "dispose" suggest something more like "throw away," in which case some degree of permanence is implied? The statute leaves us in doubt. And that means we must look to state cases interpreting the statute to see if they make clear the meaning of "dispose" in the statute.

Some thirty-five years ago, in *People v. Jennings*, the NYCA said, "[t]he mens rea element of larceny. . . is simply not satisfied by an intent temporarily to use property without the owner's permission, or even an intent to appropriate outright the benefits of the property's short-term use." 69 N.Y.2d 103, 119 (1986);

*accord People v. Jensen*, 86 N.Y.2d 248, 252 (1995) ("The intent to 'deprive' or 'appropriate' prescribed in section 155.05 is satisfied by the exertion of permanent or virtually permanent control over the property taken.") (internal quotations omitted). The NYCA seemed to reinforce that principle more recently in *People v. Medina*, which found the exclusion of the definitions of "deprive" and "appropriate" from a jury charge to be reversible error in part because the jury might have been misled into "thinking that any withholding, permanent or temporary, constituted larceny." 18 N.Y.3d 98, 105 (2011).

On the other hand, as Ferreiras argues, those cases concerned NYPL § 155.00(4)(a), not (4)(b), and so these statements might well be only dicta as to (4)(b). As a result, we believe that *Jennings* and *Medina* are not necessarily determinative of what the NYCA would say about NYPL § 155.00(4)(b) if it addressed that provision directly. In this respect we are influenced by an analogous situation in Connecticut, which has an identical provision in its larceny statute. *Compare* Conn. Gen. Stat. § 53a-118(a)(4)(B) *with* NYPL § 155.00(4)(b). In *State v. Wieler*, the Connecticut Supreme Court addressed its § (4)(B), and held that it merely "requires disposal of the property without the intent permanently to deprive the victims of their property." 660 A.2d 740, 742 (Conn. 1995). We cannot be sure that

the NYCA would interpret NYPL § 155.00(4)(b) otherwise, or find that the subsection encompasses an intent to substantially erode property rights..

Turning to New York's lower courts does not clarify the issue. Several cases seem to support the government's position. For example, in *People v. Brigante* the Appellate Division explained that larcenous intent is constituted by "a substantially permanent appropriation of the property." 186 A.D.2d 360, 360 (1st Dep't 1992). *See also People v. Hoyt*, 92 A.D.2d 1079, 1079 (3d Dep't 1983) ("[A] temporary withholding of the [stolen property], by itself, would not constitute larcenous intent."); *People v. Montgomery*, 39 A.D.2d 889 (1st Dep't 1972) (requiring evidence of intent permanently to deprive taxi owner of the vehicle to sustain grand larceny conviction where robber abandoned the car after a short drive). Similarly, in *People v. Drouin,* the Appellate Division relied on *Jennings* to hold that a landlord's intent to possess his tenant's ATV temporarily was insufficient to sustain a larceny conviction. 143 A.D.3d 1056, 1058, (3d Dep't 2016).[3]

---

[3] An additional line of Appellate Division cases has found reversible error where a trial judge excluded the definitions of "deprive" and "appropriate" from the jury charge in a larceny case because the jury could be misled "into thinking that any withholding, permanent or temporary, constituted larceny." *People v. Matthews*, 61 A.D.2d 1017, 1017 (2d Dep't 1978). *See e.g., People v. Archie*, 71 A.D.3d 686, 688 (2d Dep't 2010); *People v. Albanese*, 88 A.D.2d 603, 603 (2d Dep't 1982); *People v. Johnson,* 75 A.D.2d 585, 585 (2d Dep't 1980). Again, it is not clear in these cases whether

But we also find some possible support for Ferreiras's position in the lower courts of New York. In *In re Reinaldo O.*, the Appellate Division interpreted NYPL § 155.00(4)(a) to uphold a petit larceny conviction against a student who temporarily stole his teacher's credit card. 250 A.D.2d 502 (1st Dep't 1998). And, more recently, the Appellate Division has explained that a larceny conviction could be sustained where "the trial evidence established a completed asportation of the [stolen property] with larcenous intent, even if the takings were to be viewed as temporary." *People v. DiCarlo*, 293 A.D.2d 279, 280 (1st Dep't 2002). The government argues that even these cases can be read, in line with *Jennings*, to require more than a temporary taking in order to support a larceny conviction. Perhaps, but like *Jennings*, none of these cases specifically interprets NYPL § 155.00(4)(b). We are therefore left without clear guidance about the applicability of *Jennings* to that section.

Given these New York cases, if certification were not available, we would likely hold that NYPL § 155.00 conforms to the BIA's definition of a CIMT, and does require an intent to deprive owners of their property permanently, or in such

---

the NYCA or the Appellate Division intends this rule to apply to NYPL § 155.00(4)(b).

a way that their property rights are "substantially eroded." In other words, we would read *Jennings* as applying to both sub-sections (a) and (b) of NYPL § 155.00(4). As a result, if the NYCA declines certification we would most probably agree with the government that petit larceny in New York constitutes a CIMT.

We believe, however, that the NYCA should have the last word on this issue, and for that reason, certify the question.[4] We are not suggesting that the NYCA should answer us, but only asking it to speak if it wishes.[5] In this respect, we are almost like the Appellate Division. The NYCA may take the case up if it thinks we are wrong or if it simply wishes to speak to the issue. But it may also decline to hear the case for any number of reasons, including a reluctance to address the question at this time.

---

[4] As we mentioned earlier, if we do not give the NYCA the opportunity now, and later they say we were wrong, we would have invited difficulties if any number of deported people sought to reopen their cases to correct the mistake.

[5] We did something similar in *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 772 F.3d 740 (2014). There too, we indicated our likely outcome in the face of considerable Delaware case law. In that case we actually urged the Delaware Supreme Court to do something specific about those state cases, which it did. *See NAF Holdings, LLC v. Li Fung (Trading) Ltd.*, 118 A.3d 175 (Del. 2015). Here we urge no outcome, but merely invite the NYCA, should it accept our certification, to speak on this issue.

**CONCLUSION**

Because we believe it appropriate to give the NYCA a chance to speak to the meaning of NYPL § 155.00(4)(b), one way or the other, in a case that concerns this New York statute and its consequences, we certify the following question to the New York State Court of Appeals:

> Does an intent to "appropriate" property under New York Penal Law § 155.00(4)(b) require an intent to deprive the owner of his or her property either permanently or under circumstances where the owner's property rights are substantially eroded?

As always, if the NYCA accepts certification, we invite it to address any other issues involving New York law as it relates to the instant case. This panel will retain jurisdiction following the response of the New York State Court of Appeals.

It is therefore **ORDERED** that the Clerk of this Court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below, together with complete sets of briefs and appendices, and the records filed in this Court by the parties.

**CERTIFICATE**

The foregoing is hereby certified to the Court of Appeals of New York pursuant to Second Circuit Local Rule 27.2 and New York Codes, Rules, and Regulations Title 22, § 500.27(a), as ordered by the United States Court of Appeals for the Second Circuit.

RICHARD J. SULLIVAN, *Circuit Judge*, dissenting:

I disagree with the majority's decision to certify a question concerning New York Penal Law § 155.00(4)(b) to the New York Court of Appeals. In my view, the majority opinion takes a straightforward statutory provision that New York's highest court has repeatedly interpreted and asks it to consider the statute again. Because such a certification is unnecessary and, worse, an imposition on the New York Court of Appeals, I respectfully dissent.

I agree with the majority on the basic facts and general legal framework. In 2011, Andy Ferreiras, who is a citizen of the Dominican Republic, became a lawful permanent resident of the United States. He turned to crime sometime later and pleaded guilty in 2017 to three charges of petit larceny under New York Penal Law § 155.25. In light of these offenses, an Immigration Judge found that Ferreiras was deportable pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii), which renders an alien removable when he is convicted of multiple "crimes involving moral turpitude."

Larceny is a crime of moral turpitude only if it requires "an intent to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded." *Matter of Diaz-Lizarraga*, 26 I. & N. Dec. 847, 853 (BIA 2016). So our task here is to determine whether the intent required under New York's larceny statute, as interpreted by the state's case law,

actually requires the intent to permanently deprive the property owner or substantially erode the owner's property rights. *See* Maj. Op. at 6–8 (describing categorical approach); *Quito v. Barr*, 948 F.3d 83, 91–92 (2d Cir. 2020); *Matthews v. Barr*, 927 F.3d 606, 616 (2d Cir. 2019) ("In determining whether NYPL § 260.10(1) is a crime of child abuse, we employ the 'categorical approach,' looking only to the text of NYPL § 260.10(1) and New York's interpretation of that statute to determine whether there is a categorical match with the BIA's definition.").

From my perspective, that is a question we could answer for ourselves, without resorting to the "exceptional procedure" of certification. *McGrath v. Toys "R" Us, Inc.*, 356 F.3d 246, 250 (2d Cir. 2004). In the mine-run of cases, certification is simply unnecessary because federal courts are competent to apply state law. *See McKesson v. Doe*, 141 S. Ct. 48, 51 (2020) ("Our system of cooperative judicial federalism presumes federal and state courts alike are competent to apply federal and state law." (internal quotation marks omitted)). Indeed, we certify questions only when, after consulting the relevant statute's text and the state's binding precedent, we conclude that "state law is so uncertain that we can make no reasonable prediction" about how the state's highest court would decide the question. *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005); *see also* 17A Charles

2

A. Wright *et al.*, *Federal Practice & Procedure* § 4248 (3d ed. 2007) ("Questions ought not be certified if the answer is reasonably clear.").

Here, both the text of the larceny statute and controlling New York case law leave no doubt that larceny under New York law requires the same culpable mental state as a crime involving moral turpitude. Under New York law, a person is guilty of petit larceny only if he steals property with the intent to "deprive another of property" or the intent "to appropriate the same to himself or to a third person." N.Y.P.L. § 155.05(1) (1965). To "deprive" another of property means "(a) to withhold it . . . permanently or for so extended a period . . . that the major portion of its economic value or benefit is lost to him, or (b) to dispose of the property in such manner . . . as to render it unlikely that an owner will recover such property." *Id.* § 155.00(3). It is undisputed that such criminal intent matches the intent required to qualify as a crime involving moral turpitude. Instead, the parties' disagreement is over the statute's definition of "appropriate," which means "(a) to exercise control over [the property] . . . permanently or for so extended a period . . . as to acquire the major portion of its economic value or benefit, or (b) to dispose of the property for the benefit of oneself or a third person." *Id.* § 155.00(4). As the majority recognizes, the first half of this definition also "clearly coheres with the

3

federal requirement" for a crime involving moral turpitude, as it explicitly references the intent to exercise permanent control. Maj. Op. at 9.

Where the majority and I disagree, however, is over the second half of the definition of "appropriate." The majority opinion suggests that the statute's use of the term "dispose of the property" may criminalize larceny where the thief merely intends to steal property for a brief duration; but that contorted reading stretches the statutory terms beyond recognition. To "dispose of" plainly means "[t]o transfer or part with, as by giving or selling" or "[t]o get rid of; throw out or away." *The American Heritage Dictionary of the English Language* (1969); *see Ballentine's Law Dictionary* (3d ed. 1969) ("To alienate, sell, or transfer."); *New Oxford American Dictionary* (3d ed. 2010) ("get rid of by throwing away or giving or selling to someone else").

This is how related statutory provisions use the term. In fact, under the same statutory title on crimes involving theft, New York Penal Law § 165.65 directs that a person can ordinarily be convicted of criminal possession of stolen property based on "the testimony of one . . . to whom he *disposed of* such property." N.Y.P.L. § 165.65(2) (emphasis added). Those words make senses only if we interpret "disposed of" as akin to "transferred, conveyed, or sold." Similarly, another

4

provision in the same chapter criminalizes certain fraudulent activity after a person "sells or otherwise disposes of the property." *Id.* § 185.05(1); *see id.* § 185.10 (criminalizing fraud related to mortgaged property when a person improperly "sells, assigns, exchanges, secretes, injures, destroys or otherwise disposes of any part of the property"); *id.* § 185.15 (similar list). Accordingly, contrary to the majority opinion's suggestion, the intent required to "dispose of the property" under the state's larceny statute could not "be as minimal as" the intent to take a car joyriding or to steal property with the hope of returning it "the next day." Maj. Op. at 9.[1] The phrase instead requires action that would permanently or substantially erode the property owner's rights.

Any doubt on this score has already been eliminated by the New York Court of Appeals, which has consistently made clear that "[t]he *mens rea* element of larceny . . . is simply not satisfied by an intent temporarily to use property without the owner's permission, or even an intent to appropriate outright the benefits of the property's short-term use." *People v. Jennings*, 69 N.Y.2d 103, 119 (1986); *see People v. Jensen*, 86 N.Y.2d 248, 252 (1995) ("The intent to 'deprive' or 'appropriate'

---

[1] The majority opinion's example of joyriding actually undermines its conclusion because the New York Court of Appeals already addressed the joyriding scenario and specifically "held that the intent merely to borrow and use an automobile without the owner's permission cannot support a conviction for larceny." *People v. Jennings*, 69 N.Y.2d 103, 119 (1986); *see id.* at 119 n.4.

5

prescribed in section 155.05 is satisfied by the exertion of permanent or virtually permanent control over the property taken." (internal quotation marks omitted)). Applying this rule, the Court of Appeals held in *People v. Medina* that a trial court committed reversible error when it failed to instruct the jury on the statutory definitions of "appropriate" and/or "deprive," thus potentially misleading the jury into thinking that those terms covered "any withholding, permanent or temporary." 18 N.Y.3d 98, 105 (2011). In unmistakable language, the court went on to find that "the concepts of 'deprive' and 'appropriate,'" which are "essential to a definition of larcenous intent," "connote a purpose to exert permanent or virtually permanent control over the property taken, or to cause permanent or virtually permanent loss to the owner." *Id.* (some internal quotation marks, emphasis, and punctuation omitted).

The majority here nevertheless concludes that these opinions "are not necessarily determinative" because, as the majority sees it, the state cases addressed only the first half of the statutory definition of "appropriate" in § 155.00(4)(a), rather than the "disposed of" language in subdivision (4)(b) of the definition. But the *Jensen* case did not even specifically refer to § 155.00(4)(a), let alone limit its focus to that subdivision; instead, it spoke generally of the "intent

6

to 'deprive' or 'appropriate' . . . [as being] satisfied by the exertion of 'permanent or virtually permanent control over the property taken.'" 86 N.Y.2d at 252. For its part, *Medina* quoted the statutory definitions of both "deprive" and "appropriate," 18 N.Y.3d at 105 n.2, and at no point parsed out portions of the statutory definition of "appropriate." Importantly, if larcenous intent could mean a desire to appropriate property for a short time, then the trial judge's failure in *Medina* to define the terms "deprive" and "appropriate" – and to communicate the "permanent or virtually permanent control . . . or loss" that those terms imply – would have been harmless error. *Id.* at 105.

Therefore, both the larceny statute and New York's case law show that larceny has as an element the intent to assume "permanent or virtually permanent control over the property taken, or to cause permanent or virtually permanent loss to the owner." *Id.* That element clearly entails the intent to "substantially erode[]" property rights, and thus aligns with the federal definition of a crime involving moral turpitude. *Matter of Diaz-Lizarraga*, 26 I. & N. Dec. at 853.

"It would be manifestly inappropriate to certify a question in a case where, as here, there is no uncertain question of state law whose resolution might affect the pending federal claim." *City of Houston v. Hill*, 482 U.S. 451, 471 (1987). In

7

opting to certify this straightforward case anyway, the majority shifts our burden to interpret state law onto a court that is equally burdened, all while increasing the litigation costs for parties who never requested certification in the first place. *See McKesson*, 141 S. Ct. at 51; *McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir. 1997).

I would not take this unnecessary procedural step, and instead would decide this case as we have done numerous times before – by looking to the relevant statute and clearly established law from the state's highest court. And because Ferreiras's offenses qualify as crimes of moral turpitude, I would deny his petition for review. Accordingly, I respectfully dissent.