IN THE

# United States Court of Appeals

## For the Second Circuit

_____

AUGUST TERM, 2020

ARGUED: NOVEMBER 23, 2020
DECIDED: FEBRUARY 17, 2022

No. 19-4111

ANDY PABEL FERREIRAS VELOZ, AKA ANDY FERREIRAS,

*Petitioner-Appellant,*

*v.*

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,

*Respondent-Appellee.*

_____

On Petition for Review of a Final Decision of the Board of Immigration Appeals.

_____

Before: CALABRESI and SULLIVAN, *Circuit Judges.*[*]

_____

_____

[*] Judge Robert A. Katzmann, who was a member of the original panel in this case, died while the New York Court of Appeals was considering whether to grant certification. This appeal is decided by the two remaining members of the panel, who are in agreement. *See* 2d Cir. IOP E(b).

Petitioner Andy Ferreiras sought review of a final order of removal from the Board of Immigration Appeals (BIA). The BIA found Petitioner removable as a noncitizen convicted of two or more crimes involving moral turpitude. It did so based on its determination that New York petit larceny constitutes such a crime. This Court certified to the New York Court of Appeals the question of whether an intent to "appropriate" property under New York Penal Law § 155.00(4)(b) requires an intent to deprive the owner of his or her property either permanently or under circumstances where the owner's property rights are substantially eroded. In so certifying, we explained that, if the New York Court of Appeals declined to accept certification, this Court would likely answer the question in the affirmative. The New York Court of Appeals declined, and so this Court decides that, as a matter of New York law, New York petit larceny requires an intent to deprive the owner of his or her property either permanently or under circumstances where the owner's property rights are substantially eroded. As such, it is categorically a crime involving moral turpitude, and the petition for review is denied.

_____

ADAM AMIR & NOAH A. LEVINE, Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY *for Petitioner-Appellant.*

ETHAN P. DAVIS, Acting Assistant Attorney General – Civil Division (Cindy Ferrier, Assistant Director, Sarai M. Aldana, Trial Attorney, Office of Immigration Litigation, Civil Division, Department of Justice, *on the brief*), Washington, DC *for Respondent-Appellee.*

CALABRESI, *Circuit Judge*:

The issue in this case is whether New York petit larceny, N.Y. Penal Law § 155.25, is categorically a "crime involving moral turpitude" (CIMT) such that a noncitizen twice convicted of that crime is deportable. *See* 8 U.S.C. § 1227(a)(2)(A)(ii). Answering that question requires us to define with certainty how broad the elements of New York petit larceny are. *See, e.g., Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013); *Hylton v. Sessions*, 897 F.3d 57, 60 (2d Cir. 2018). A divided panel certified that further question to the New York Court of Appeals. *See Ferreiras Veloz v. Garland*, 999 F.3d 798, 805 (2d Cir. 2021). In certifying, we also indicated that if the Court of Appeals declined certification, we would likely conclude that New York petit larceny constitutes a CIMT. *Id.* at 804. The New

York high court declined, and so we now answer accordingly. Because we find that New York has defined petit larceny narrowly, we conclude that it is categorically a CIMT, and so, we deny the petition for review.

**BACKGROUND**

As we explained in our previous opinion, Andy Ferreiras became a lawful permanent resident in 2011. *Ferreiras Veloz*, 999 F.3d at 801. On three separate occasions in 2017, he was convicted of New York petit larceny, and the Department of Homeland Security subsequently initiated removal proceedings, charging Mr. Ferreiras as a noncitizen "convicted of two or more crimes involving moral turpitude . . . ," 8 U.S.C. § 1227(a)(2)(A)(ii). The Immigration Judge found that Mr. Ferreiras's petit larceny convictions were CIMTs, and the Board of Immigration Appeals (BIA) affirmed. *See Ferreiras Veloz*, at 801.

Mr. Ferreiras timely petitioned for review. As he had before the agency, he claimed that New York petit larceny was categorically broader than the BIA's recent definition of CIMTs involving theft crimes. *See id.* In particular, he argued that a person may be convicted of larceny under New York law where that person merely "dispose[s] of the property [of another] for the benefit of oneself or a third person," N.Y. Penal Law § 155.00(4). And such "dispos[al]" need not

involve "an intent to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded," as the BIA had said was necessary for a theft crime to be a CIMT. *See Matter of Diaz-Lizarraga*, 26 I. & N. Dec. 847, 853 (B.I.A. 2016).

When we first considered this case, we were divided on how clear New York decisional law was. The dissenting judge believed that New York clearly defined petit larceny sufficiently narrowly so that it fit within the BIA's definition of CIMT for theft crimes. *See Ferreiras Veloz*, 999 F.3d at 805–08 (Sullivan, J., dissenting). The majority, though, had doubts and so deemed it advisable to ask the New York Court of Appeals, by certification, whether "an intent to 'appropriate' property under New York Penal Law § 155.00(4)(b) require[s] an intent to deprive the owner of his or her property either permanently or under circumstances where the owner's property rights are substantially eroded." *Id.* at 804 (majority opinion). The majority further explained that, should the New York Court of Appeals choose not to accept certification, "we would likely hold that [New York Penal Law] § 155.00 conforms to the BIA's definition of a CIMT, and does require an intent to deprive

owners of their property permanently, or in such a way that their property rights are 'substantially eroded.'" *Id.*

The New York Court of Appeals "after due deliberation, order[ed] and adjudge[d] that certification of the question . . . in the particular circumstances of this individual matter, is respectfully declined." Letter on behalf of State of New York Court of Appeals, *Ferreiras Veloz v. Garland*, No. 19-4111 (2d Cir. Sept. 14, 2021), ECF No. 142. So, now it is for us to recognize the consequences of that declination.

**DISCUSSION**

To determine whether Mr. Ferreiras's New York petit larceny convictions make him subject to removal under 8 U.S.C. § 1227(a)(2)(A)(ii), we employ the categorical approach. We take this approach because the relevant statute "predicate[s] deportation on convictions, not conduct," requiring us to "look[] to the statutory definition of the offense of conviction." *Mellouli v. Lynch*, 575 U.S. 798, 805 (2015) (internal quotations omitted); *see also Moncrieffe*, 569 U.S. 184, 190–91. We therefore ask what conduct that "conviction of the state offense *necessarily* involved." *Moncrieffe*, at 190 (internal quotations omitted, emphasis added). Under the categorical approach, for better or for worse, the noncitizen's "actual

conduct is irrelevant to the inquiry, as the adjudicator must presume that the conviction rested upon nothing more than the least of the acts criminalized under the state statute." *Mellouli*, at 805 (internal quotations omitted). As a result, our focus is only on whether a given state crime, "by definition," falls within the "category of removable offenses defined by federal law." *Id.*

The categorical approach, moreover, requires that removal may be based only "on a legal certainty" concerning what the noncitizen was convicted of. *See Mathis v. United States*, 136 S. Ct. 2243, 2255 n.6 (2016) (internal quotation omitted). And such certainty is present only when a given state crime "qualif[ies] as a predicate offense in all cases or none," that is, *categorically*. *Descamps v. United States*, 570 U.S. 254, 268 (2013); *see Mathis*, 136 S. Ct. at 2251 ("it is impermissible for 'a particular crime [to] sometimes count towards enhancement and sometimes not'" (quoting *Taylor v. United States*, 495 U.S. 575, 601 (1990)) (alteration in *Mathis*)); *cf. Moncrieffe*, 569 U.S. at 194–95 (ambiguity on whether a state crime falls within a given federal category means "the conviction did not 'necessarily' involve facts that correspond to [the federal criterion]").

In this case, the relevant federal category has been defined by the BIA. The immigration statute as relevant here requires proof that Mr. Ferreiras had been

"convicted of two or more crimes involving moral turpitude," 8 U.S.C. § 1227(a)(2)(A)(ii). As the BIA currently interprets that term, "a theft offense is a crime involving moral turpitude if it involves an intent to deprive the owner of his property *either permanently or under circumstances where the owner's property rights are substantially eroded*." *Diaz-Lizarraga*, 26 I. & N. Dec. at 853 (emphasis added).[1]

That brings us to the question the categorical approach asks in this case. Does New York petit larceny, the state crime at issue here, categorically (that is, in all instances) require proof that an offender's intent was "to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded"? *See id.*

We certified this question to the New York Court of Appeals, indicating that, absent a further decision from that court, we would likely hold that New York law as expressed in the Court of Appeals' prior decisions does not allow for

---

[1] Prior to November 16, 2016, the BIA had long held that a theft offense qualified as a CIMT "only when a permanent taking is intended," *Wala v. Mukasey*, 511 F.3d 102, 106 (2d Cir. 2007) (internal quotation omitted). *See Obeya*, 884 F.3d 442, 444–46 (2d Cir. 2018); *Diaz-Lizarraga*, 26 I. & N. Dec. at 849–51. Mr. Ferreiras does not challenge the validity of the BIA's new definition.

a conviction of larceny absent an intent at least substantially to erode the owner's property rights. *Ferreiras Veloz*, 999 F.3d at 804–05; *see also id.* at 807–08 (Sullivan, J., dissenting). We would, in other words, read New York law to be that where the state was not able to prove at least such intent, defendants would be legally innocent of larceny. *See People v. Jennings*, 504 N.E.2d 1079, 1086–89 (N.Y. 1985). It was in this context that the New York Court of Appeals declined certification. And so, that is the result we now reach.

**CONCLUSION**

Accordingly, we today read New York law to be as we earlier indicated that it most likely was: a person may not be convicted for New York larceny absent an intent to deprive permanently or under circumstances where the owner's property rights are substantially eroded. And we therefore deny the petition.

GUIDO CALABRESI, *Circuit Judge*, concurring:

I add a few words to explain 1) why the then-majority of this panel deemed it advisable to certify to the New York Court of Appeals the question described in our current majority opinion, and 2) why, at the same time, it indicated what our action would likely be should that court decline certification.[1]

As the current majority states, there were opinions of the New York Court of Appeals that suggested that New York petit theft requires proof of an offender's intent to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded such that petit theft would categorically be a crime involving moral turpitude (CIMT).[2] On the other hand, there were opinions of lower courts of New York

---

[1] The then-majority consisted of Judge Katzmann and me. Judge Sullivan did not believe certification necessary or appropriate and so dissented. While the certification was pending, Judge Katzmann died. Judge Sullivan and I, with the benefit of the Court of Appeals' declination, now agree and form a new majority to decide the case.

[2] *See People v. Jennings*, 504 N.E.2d 1079, 1087 (N.Y. 1985) ("an intent temporarily to use property without the owner's permission, or even an intent to appropriate outright the benefits of the property's short-term use" would not amount to larcenous intent unless it was to use another's property "for so extended a period or under such circumstances as to acquire the *major portion* of its economic value or benefit") (emphasis in original); *see also People v. Medina*, 960 N.E.2d 377, 381–

1

which did not seem to follow the Court of Appeals; these treated petit theft in a way that would mean that not all instances of the crime were CIMTs.[3] While these cases were not directly contrary to the New York Court of Appeals holdings, they were in sufficient tension with their holdings to cause the then-majority to be uncertain. In addition, the Connecticut Supreme Court had read identical language in an analogous Connecticut statute to allow theft convictions even for conduct that would *not* substantially erode the owner's rights; in other words, it had upheld theft convictions for crimes that were not CIMTs. *See State v. Wieler*, 660 A.2d 740, 742 (Conn. 1995); *see also Wala v. Mukasey*, 511 F.3d 102, 107 (2d Cir. 2007).

---

82 (N.Y. 2011); *People v. Jensen*, 654 N.E.2d 1237, 1239 (N.Y. 1995); *People v. Blacknall*, 472 N.E.2d 1034, 1034–35 (N.Y. 1984).

[3] *See Ferreiras Veloz*, 999 F.3d at 804 (discussing Appellate Division cases allowing for conviction apparently based only on temporary takings); *People v. Wright*, 816 N.Y.S.2d 700 (Table), 2006 WL 1068656, at *3 (N.Y. Crim. Ct. Apr. 24, 2006) (allowing that person could be "convicted of a larceny *even if evidence does not establish an intent to steal* as long as he or she takes property belonging to another without the owner's consent") (emphasis added); *People v. Kinfe*, 43 N.Y.S.3d 768 (Table), 2016 WL 4275781, at *1, 2 (N.Y. Crim. Ct. Aug. 12, 2016) (finding sufficient evidence of larcenous intent where defendant, in exchange for $20, provided an undercover officer with synthetic marijuana instead of the promised "two rocks inside some synthetic marijuana" without assessing value of synthetic marijuana or whether there was any erosion of owner's property rights); *see also Mathis v. United States*, 136 S. Ct. 2243, 2251 (2016).

Under the circumstances, the then-majority thought it wise to invite the New York Court of Appeals, if it wished, to speak further on the issue. On the other hand, because we did not wish unnecessarily to burden that court, we made a certification "raisonée," indicating how we would likely decide the question if the Court of Appeals was satisfied with an interpretation of the petit theft statute that would clearly make that crime a CIMT. In that sense, we sought to put ourselves in the position of an Appellate Division of New York, which, having decided, is open to discretionary review by the New York Court of Appeals but whose judgment will stand if the Court of Appeals chooses not to hear the case for whatever reason. *See generally Mountain View Coach Lines, Inc. v. Storms*, 476 N.Y.S.2d 918, 919–20 (N.Y. App. Div. 1984); *cf. Marchant v. Mead-Morrison Mfg. Co.*, 169 N.E. 386, 391 (N.Y. 1929) (Cardozo, C.J.) (comparing denial of motion for leave to appeal to denial of certiorari by U.S. Supreme Court).

The New York Court of Appeals by declining to accept certification has given us the answer we sought and has done so very helpfully in the briefest of time, just two months.

For these reasons, what remains of the previous majority happily agrees with the previous dissent and not only joins but writes the panel's new majority opinion.