# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-1689

_____

Shahryar Gilani

*Plaintiff - Appellant*

v.

Officer John D. Matthews, in his individual capacity; Officer Francis D. Collins, in his individual capacity; Alvin Brooks, in his official capacity as President and a member of the Board of Police Commissioners; Michael Rader, in his official capacity as Vice President and a member of the Board of Police Commissioners; Angela Wasson-Hunt, in her official capacity as Treasurer and a member of the Board of Police Commissioners

*Defendants - Appellees*

David Kenner, in his official capacity as Secretary-Attorney and a member of the Board of Police Commissioners

*Defendant*

Sylvester "Sly" James, in his official capacity as a member of the Board of Police Commissioners; Mr. Darryl Forte, in his official capacity as Police Chief of the Kansas City, Missouri Police Department

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 22, 2016
Filed: December 8, 2016

_____

Before COLLOTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Shahryar Gilani brought an action pursuant to 42 U.S.C. § 1983 against Kansas City Police Department Officers John Matthews and Francis Collins, Police Chief Darryl Forte, and members of the Board of Police Commissioners of Kansas City, Missouri. Gilani contends Officers Matthews and Collins arrested him on account of his ethnicity, in violation of the Fourteenth Amendment's Equal Protection Clause. He now appeals the district court's[1] grant of summary judgment to the defendants based on qualified immunity. We affirm.

## I. Background

### A. Facts

Shortly before 1:00 a.m. on June 27, 2013, Kansas City Police dispatch received a suspicious person report in the area of East 70th Street and Cherry Street in Kansas City, Missouri. Dispatchers relayed the report to Officers Matthews and Collins, who were patrolling the area covering East 70th Street. The report stated that a white male, wearing all white clothing, had been walking between Oak and Holmes on 70th Street and was possibly "casing" the neighborhood. As the officers drove down 70th Street, they saw an individual, dressed in all white clothing and walking

_____

[1]The Honorable Greg Kays, Chief Judge, United States District Court for the Western District of Missouri.

in the street. The individual was later identified as Shahryar Gilani. Gilani is of Turkish and Kurdish descent. As stated in Gilani's own brief, "[h]is appearance is consistent with what would be considered stereotypical of a Middle Eastern adult male—he has a dark complexion, black hair, brown eyes, and a dark beard." (Appellant Br. 1.) He is employed as a commodity futures trader.

While talking on his cellphone to a friend, Gilani was walking in the street. No sidewalk exists on the north side of the street. The south side of 70th Street does have a sidewalk, and Gilani had been walking on it. There is a section of yard, however, where the sidewalk ends and does not begin again until the next house. When he reached this break in the sidewalk, Gilani began walking in the street. At that moment, Officers Matthews and Collins came upon the scene.

The officers drove their car toward Gilani and shined a spotlight on him. Gilani, not realizing it was a police car coming at him, continued walking and talking on his cellphone. The officers exited the vehicle and one of them called out to Gilani. Gilani did not appear to acknowledge the officers and kept walking. Officer Matthews then moved toward Gilani and shepherded him to the front of the police vehicle. Gilani continued his phone conversation until Officer Collins took the phone from him, and Officer Matthews then began patting down Gilani for weapons. No weapons were found. Officer Collins explained to Gilani that they stopped him because of a suspicious person report that matched Gilani's description. Officer Collins also stated that Gilani had violated a city ordinance by walking in the street rather than on an available sidewalk. See Kansas City, Mo., Code of Ordinances § 70-786(a) ("Where a sidewalk is provided and its use is practicable, it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway.").

Officer Matthews handcuffed Gilani as Gilani expressed disbelief that he had done anything wrong. Gilani protested that no sidewalk existed where he was walking, but Officer Collins insisted there was one. From where they each stood, a

parked truck partially blocked the view of the stretch of yard without a sidewalk. Throughout the encounter with Gilani, neither of the officers walked to the south side of 70th Street to confirm whether a sidewalk actually existed where Gilani had been walking.

Shortly after handcuffing Gilani, Officer Collins asked Gilani for identification. Gilani stated that he did not have any identification on him. Collins then asked where Gilani lived. Gilani did not respond and questioned again why he had been detained. After further conversation, Gilani offered his name, address, and date of birth to Officer Matthews. The address he provided was a house located just up the street from where they were standing. Gilani also pointed to his BMW parked on the road. As Officer Matthews relayed this information to dispatch, he identified Gilani as a white male.

The computer searches run by police dispatch could not verify any of Gilani's information. Officer Matthews asked for Gilani's driver's license. Gilani replied that it was not on him but rather in his house. Officer Matthews then asked for Gilani's social security number. Gilani refused to provide it. The officers decided to call for police transport to take Gilani to a detention center for identification. While waiting for the police transport vehicle to arrive, Gilani provided his social security number and repeatedly asserted that he had done nothing wrong. The officers continued to reject Gilani's claim that no sidewalk existed along the street where he was walking. Again, neither officer walked the short distance to determine whether a sidewalk existed in the vicinity. Gilani also stated several times that his driver's license was in his house and that he could get it. Officer Collins responded that "there was a point" earlier in the encounter when they might have allowed Gilani to go into the house to retrieve his license. Officer Collins indicated, however, that he and Officer Matthews were not willing to consider that course of action anymore.

When police transport arrived and as Gilani was being loaded into the vehicle, a woman in a black dress was walking in 70th Street toward Officer Collins. Collins spoke with the woman, who informed Collins that she lived on the street. The police transport vehicle had blocked her access to the street, and she wanted to reach her house. Collins let her proceed without a citation and watched her walk to a nearby house. In his deposition testimony, Collins described the woman as a white female. Gilani has never located the woman nor has he positively identified her race or ethnicity.

Gilani spent approximately fourteen hours in police custody. He initially pled guilty to violating the city ordinance but later hired an attorney and the guilty plea was subsequently set aside and the charge dismissed.

## B. Procedural History

Gilani brought suit under 42 U.S.C. § 1983 against Officers Matthews and Collins. Gilani made two claims against the officers. First, he alleged that they violated his Fourteenth Amendment rights by selectively enforcing the Kansas City ordinance against him due to his ethnicity. Second, he claimed that each officer failed to intervene when the other violated his Fourteenth Amendment rights. Gilani later amended his complaint, adding Police Chief Darryl Forte and members of the Board of Police Commissioners of Kansas City, Missouri as defendants. As to these new defendants, Gilani added a third claim under § 1983, alleging deprivations of constitutional rights resulting from official policies, procedures, practices, customs, and usages.

Following discovery, the defendants moved for summary judgment. The district court granted the motion as to all defendants. The court held that qualified immunity protected Officers Matthews and Collins. Without liability for their actions, the claims against Forte and members of the Board necessarily failed as well.

See McCoy v. City of Monticello, 411 F.3d 920, 922 (8th Cir. 2005) ("This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim."). Gilani has appealed the district court's grant of summary judgment on the claims of selective enforcement and failure to intervene against Officers Matthews and Collins. He has not appealed judgment in favor of Forte and members of the Board.

## II.  Discussion

"We review a district court's qualified immunity determination on summary judgment *de novo*, viewing the record in the light most favorable to [Gilani] and drawing all reasonable inferences in [his] favor." Meehan v. Thompson, 763 F.3d 936, 940 (8th Cir. 2014) (quoting Shannon v. Koehler, 616 F.3d 855, 861-62 (8th Cir. 2010)).  We will uphold a grant of summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments" and "protects all but the plainly incompetent or those who knowingly violate the law." Stanton v. Sims, 134 S. Ct. 3, 5 (2013) (per curiam) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011)).  It shields officers from liability "unless [their] conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Shekleton v. Eichenberger, 677 F.3d 361, 365 (8th Cir. 2012) (quoting Brown v. City of Golden Valley, 574 F.3d 491, 495 (8th Cir. 2009)).  To evaluate a claim of qualified immunity, we engage in a two-pronged inquiry: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Id.  "[U]nder either prong, courts may not resolve genuine disputes of fact in favor

of the party seeking summary judgment." Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (per curiam).

We begin our analysis by determining whether Gilani has presented facts sufficient to show the violation of a constitutional right. "[T]he Constitution prohibits selective enforcement of the law based on considerations such as [ethnicity] . . . [and] the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause . . . ." Johnson v. Crooks, 326 F.3d 995, 999 (8th Cir. 2003) (quoting Whren v. United States, 517 U.S. 806, 813 (1996)). A claim of selective enforcement in the context of this case requires proof that the officers exercised their discretion to enforce the traffic laws solely because of Gilani's ethnicity. See United States v. Frazier, 408 F.3d 1102, 1108 (8th Cir. 2005). To succeed, Gilani "must show both that the enforcement had a discriminatory effect, and that the enforcement was motivated by a discriminatory purpose." United States v. Bell, 86 F.3d 820, 823 (8th Cir. 1996).

## A. Discriminatory Effect

To establish discriminatory effect, Gilani must show people of another ethnicity violated the law and the law was not enforced against them. Id. When the claim is selective enforcement of a traffic law, "the plaintiff must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose." Crooks, 326 F.3d at 1000. "[A] prima facie equal protection claim may also be proved by direct evidence of racial discrimination . . . ." Id.

Gilani makes two arguments with respect to discriminatory effect. First, he presents evidence of a white female who came upon the scene of his arrest as he was being loaded into the police transport vehicle. Gilani argues that she was walking in the street, just as he had been, but that Officer Collins allowed her to continue

walking down the street without issuing a citation. The only explanation for this disparate treatment, Gilani contends, was the difference in ethnicity between him and the woman.

Though Gilani has shown he and the woman were similarly situated in one respect, he has failed to show that they were similarly situated "in all relevant respects." See Flowers v. City of Minneapolis, 558 F.3d 794, 798 (8th Cir. 2009). That evening, police dispatch received a report that a suspicious person—a white male in all white clothing—was walking along 70th Street. The report was then conveyed to Officers Matthews and Collins. A short time later, as they drove along 70th Street, the officers saw an individual—Gilani—who perfectly matched the description of the suspicious person. His defensive behavior and refusal to provide information reasonably fueled the officers' suspicions. Unable to verify his identity, they detained Gilani and took him into custody until he could be positively identified. On the other hand, the unidentified woman was not seen walking in the street until long after the suspicious person report. Nor did the suspicious person report describe a white woman in a black dress. These circumstances show Gilani and the woman were not similarly situated in all relevant respects.

Gilani's second argument for discriminatory effect is a statistical analysis of the incidents of arrest for violating § 70-786(a) of the Kansas City Code of Ordinances. Gilani's statistics show that in 2014, black males accounted for 63% of arrests for violating the sidewalk ordinance. White females accounted for only 5% of arrests. Data from the Census Bureau reveals that the Kansas City population is approximately 59% white and 30% black. Taken together, these statistics purportedly show that a disproportionate number of black men are arrested for violating the sidewalk ordinance.

The statistics offered by Gilani are wholly unpersuasive. They do not show that whites are violating the ordinance and escaping arrest at a disproportionate rate

than blacks. See United States v. Armstrong, 517 U.S. 456, 470 (1996) (rejecting a study that "failed to identify individuals who were not black and could have been prosecuted for the offenses . . . but were not so prosecuted"). "Absent some evidence of racially disproportionate arrests compared to the actual incidence of violations by race, there is no basis for inferring racially selective law enforcement." Bell, 86 F.3d at 823. Moreover, Gilani's statistics do not address the frequency with which Officers Matthews and Collins detain or cite those of Middle Eastern descent for violating the sidewalk ordinance. How frequently the Department as a whole cites black males is simply beside the point. See Reynolds v. Barrett, 685 F.3d 193, 204 (2d Cir. 2012) (holding that "statistics demonstrating employer-wide discrimination are insufficient to establish which individual defendants engaged in purposeful discrimination"). Even if the statistics did specifically pertain to Officers Matthews and Collins, they in fact identified Gilani as a member of the purportedly preferred class—white. Gilani therefore has failed to establish discriminatory effect.

## B. Discriminatory Purpose

"Proving discriminatory purpose is no simple task." Villanueva v. City of Scottsbluff, 779 F.3d 507, 511 (8th Cir. 2015). Gilani must offer evidence that Officers Matthews and Collins enforced the Kansas City ordinance against him because of his ethnicity. See id.; Bell, 86 F.3d at 823. Although we must view the facts in the light most favorable to Gilani, we need not "accept unreasonable inferences or sheer speculation as fact." Reed v. City of St. Charles, 561 F.3d 788, 791 (8th Cir. 2009) (quoting Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004)).

Gilani's claim of selective enforcement relies primarily on two facts. First, he points out that neither officer ever checked to see if a sidewalk actually existed on the south side of 70th Street in the area of the stop. Gilani argues that if either of them had checked, they would have seen that there was no sidewalk, and therefore known

that Gilani had not violated the city ordinance. Second, Gilani points to the officers' refusal to allow him to retrieve his license from his nearby house. Since part of the explanation offered by the officers for taking Gilani into custody was a lack of identification, according to Gilani, simply allowing him to get his license, or using his phone to call his roommate in the house, would have verified his identity. Gilani also directs the court to additional aspects of the encounter—that the officers were intimidating and antagonistic toward Gilani, that they found him defensive and uncooperative merely because he continued to speak on his cellphone, and that he was handcuffed within seconds of the officers' arrival.

Reduced to its essence, Gilani's claim is that his citation and arrest were the result of an arbitrary and unreasonable exercise of enforcement discretion by Officers Matthews and Collins. That may well be true, but Gilani has not offered any evidence that his ethnicity played a role in the decision to cite and arrest him. Nor has he presented evidence showing that the officers' behavior indicated a "clear pattern, unexplainable on grounds other than [ethnicity]." Friends of Lake View Sch. Dist. v. Beebe, 578 F.3d 753, 762 n.12 (8th Cir. 2009) (quoting Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266 (1977)). Officers Matthews and Collins came upon Gilani while investigating a report of a suspicious person casing the neighborhood. Gilani matched the description. They then (mistakenly) observed him violating a city ordinance and cited him accordingly. Gilani can identify no statement made by the officers expressing a discriminatory intent or any animus based upon his ethnicity. In fact, the only mention of ethnicity occurred when Officer Matthews relayed information to police dispatch and identified Gilani as a white male.

Whether or not the officers acted unreasonably, Gilani offers insufficient evidence of discrimination to survive summary judgment. "Under our cases, [Gilani] 'must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive.'" Frazier, 408 F.3d at 1108

-10-

(quoting Johnson, 326 F.3d at 1000). Since no violation of a constitutional right occurred, the district court did not err in granting qualified immunity to Officers Matthews and Collins. We therefore need not address Gilani's failure to intervene claim.

## III. Conclusion

For the foregoing reasons, we affirm the opinion of the district court granting summary judgment based on qualified immunity.

_____