# SUPREME COURT OF THE UNITED STATES

### DERAY MCKESSON *v.* JOHN DOE

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 19–1108.   Decided November 2, 2020

PER CURIAM.

Petitioner DeRay Mckesson organized a demonstration in Baton Rouge, Louisiana, to protest a shooting by a local police officer. The protesters, allegedly at Mckesson's direction, occupied the highway in front of the police headquarters. As officers began making arrests to clear the highway, an unknown individual threw a "piece of concrete or a similar rock-like object," striking respondent Officer Doe in the face. 945 F. 3d 818, 823 (CA5 2019). Officer Doe suffered devastating injuries in the line of duty, including loss of teeth and brain trauma.

Though the culprit remains unidentified, Officer Doe sought to recover damages from Mckesson on the theory that he negligently staged the protest in a manner that caused the assault. The District Court dismissed the negligence claim as barred by the First Amendment. 272 F. Supp. 3d 841, 847–848 (MD La. 2017).

A divided panel of the Court of Appeals for the Fifth Circuit reversed. As the Fifth Circuit recognized at the outset, Louisiana law generally imposes no "'duty to protect others from the criminal activities of third persons.'" 945 F. 3d, at 827 (quoting *Posecai* v. *Wal-Mart Stores, Inc.*, 1999–1222, p. 5 (La. 11/30/99), 752 So. 2d 762, 766). But the panel majority held that a jury could plausibly find that Mckesson breached his "duty not to negligently precipitate the crime of a third party" because "a violent confrontation with a police officer was a foreseeable effect of negligently directing a protest" onto the highway. 945 F. 3d, at 827. The dissent

would have demanded something more—a "special rela-
tionship" between Mckesson and Officer Doe—before recog-
nizing such a duty under Louisiana law. *Id.,* at 836–838,
and n. 11 (Willett, J., concurring in part and dissenting in
part). The dissent likewise doubted that an intentional as-
sault is the "particular risk" for which Officer Doe could re-
cover for a breach of "Louisiana's prohibitions on highway-
blocking," which "have as their focus the protection of other
motorists." *Id.,* at 844, n. 56 (internal quotation marks
omitted).

The panel majority also rejected Mckesson's argument
that *NAACP* v. *Claiborne Hardware Co.*, 458 U. S. 886
(1982), forbids liability for speech-related activity that neg-
ligently causes a violent act unless the defendant specifi-
cally intended that the violent act would result. According
to the Fifth Circuit, the First Amendment imposes no bar-
rier to tort liability so long as the rock-throwing incident
was "one of the 'consequences' of 'tortious activity,' which
itself was 'authorized, directed, or ratified' by Mckesson in
violation of his duty of care." 945 F. 3d, at 829 (quoting
*Claiborne Hardware*, 458 U. S., at 927). Because Mckesson
allegedly directed an unlawful obstruction of a highway, see
La. Rev. Stat. Ann. §14:97 (West 2018), the Fifth Circuit
held that the First Amendment did not shield him from li-
ability for the downstream consequences. 945 F. 3d, at 829.
Again, the dissent disagreed, deeming the "novel 'negligent
protest' theory of liability" to be "incompatible with the
First Amendment and foreclosed—squarely—by" *Claiborne
Hardware*. 945 F. 3d, at 842 (opinion of Willett, J.).

The Fifth Circuit subsequently deadlocked 8 to 8 on
Mckesson's petition for rehearing en banc. 947 F. 3d 874,
875 (2020) (*per curiam*). Members of the Court of Appeals
wrote separately to express further disagreement with both
the panel decision's interpretation of state law, *id.,* at 879
(Higginson, J., dissenting from denial of rehearing en banc),
and its application of *Claiborne Hardware*, 947 F. 3d, at 878

(Dennis, J., dissenting from denial of rehearing en banc).

The question presented for our review is whether the theory of personal liability adopted by the Fifth Circuit violates the First Amendment. When violence occurs during activity protected by the First Amendment, that provision mandates "precision of regulation" with respect to "the grounds that may give rise to damages liability" as well as "the persons who may be held accountable for those damages." *Claiborne Hardware*, 458 U. S., at 916–917 (internal quotation marks omitted). Mckesson contends that his role in leading the protest onto the highway, even if negligent and punishable as a misdemeanor, cannot make him personally liable for the violent act of an individual whose only association with him was attendance at the protest.

We think that the Fifth Circuit's interpretation of state law is too uncertain a premise on which to address the question presented. The constitutional issue, though undeniably important, is implicated only if Louisiana law permits recovery under these circumstances in the first place. The dispute thus could be "greatly simplifie[d]" by guidance from the Louisiana Supreme Court on the meaning of Louisiana law. *Bellotti* v. *Baird*, 428 U. S. 132, 151 (1976).

Fortunately, the Rules of the Louisiana Supreme Court, like the rules of 47 other States, provide an opportunity to obtain such guidance. In the absence of "clear controlling precedents in the decisions of the" Louisiana Supreme Court, those Rules specify that the federal courts of appeals may certify dispositive questions of Louisiana law on their own accord or on motion of a party. La. Sup. Ct. Rule 12, §§1–2 (2019). Certification is by no means "obligatory" merely because state law is unsettled; the choice instead rests "in the sound discretion of the federal court." *Lehman Brothers* v. *Schein*, 416 U. S. 386, 391 (1974). Federal courts have only rarely resorted to state certification procedures, which can prolong the dispute and increase the expenses incurred by the parties. See *id.,* at 394–395

(Rehnquist, J., concurring). Our system of "cooperative ju-
dicial federalism" presumes federal and state courts alike
are competent to apply federal and state law. *Id.,* at 391
(opinion of the Court); cf. *Tafflin* v. *Levitt*, 493 U. S. 455,
465 (1990).

In exceptional instances, however, certification is advisa-
ble before addressing a constitutional issue. See *Bellotti*,
428 U. S., at 151; *Clay* v. *Sun Ins. Office Ltd.*, 363 U. S. 207,
212 (1960). Two aspects of this case, taken together, per-
suade us that the Court of Appeals should have certified to
the Louisiana Supreme Court the questions (1) whether
Mckesson could have breached a duty of care in organizing
and leading the protest and (2) whether Officer Doe has al-
leged a particular risk within the scope of protection af-
forded by the duty, provided one exists. See 945 F. 3d, at
839 (opinion of Willett, J.).

First, the dispute presents novel issues of state law pecu-
liarly calling for the exercise of judgment by the state
courts. See *Lehman Brothers*, 416 U. S., at 391. To impose
a duty under Louisiana law, courts must consider "various
moral, social, and economic factors," among them "the fair-
ness of imposing liability," "the historical development of
precedent," and "the direction in which society and its insti-
tutions are evolving." *Posecai*, 752 So. 2d, at 766. "Specu-
lation by a federal court about" how a state court would
weigh, for instance, the moral value of protest against the
economic consequences of withholding liability "is particu-
larly gratuitous when the state courts stand willing to ad-
dress questions of state law on certification." *Arizonans for
Official English* v. *Arizona*, 520 U. S. 43, 79 (1997) (internal
quotation marks and alteration omitted).

Second, certification would ensure that any conflict in
this case between state law and the First Amendment is not
purely hypothetical. The novelty of the claim at issue here
only underscores that "[w]arnings against premature adju-

Per Curiam

dication of constitutional questions bear heightened atten-
tion when a federal court is asked to invalidate a State's
law." *Ibid.* The Louisiana Supreme Court, to be sure, may
announce the same duty as the Fifth Circuit. But under the
unusual circumstances we confront here, we conclude that
the Fifth Circuit should not have ventured into so uncertain
an area of tort law—one laden with value judgments and
fraught with implications for First Amendment rights—
without first seeking guidance on potentially controlling
Louisiana law from the Louisiana Supreme Court. We ex-
press no opinion on the propriety of the Fifth Circuit certi-
fying or resolving on its own any other issues of state law
that the parties may raise on remand.

We therefore grant the petition for writ of certiorari, va-
cate the judgment of the United States Court of Appeals for
the Fifth Circuit, and remand the case to that court for fur-
ther proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BARRETT took no part in the consideration or
decision of this case.

JUSTICE THOMAS dissents.