# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 21-2180

———————————————

Courtney Saunders

*Plaintiff - Appellant*

v.

Kyle Thies, individually and in his official capacity as a law enforcement officer for the Des Moines, IA Police Dept.; Clint Dee, individually and in his official capacity as a law enforcement officer for the Des Moines, IA Police Dept.; Dana Wingert, individually and in his official capacity as Chief of Police for the Des Moines, IA Police Dept.; City of Des Moines, Iowa

*Defendants - Appellees*

———————————————

Appeal from United States District Court
for the Southern District of Iowa - Central

———————————————

Submitted: January 12, 2022
Filed: June 29, 2022

———————————————

Before BENTON, SHEPHERD, and STRAS, Circuit Judges.

———————————————

SHEPHERD, Circuit Judge.

Following a traffic stop during which Courtney Saunders was cited for driving with an open liquor bottle in his car, Saunders filed suit against the Des Moines Police Department officers involved in the stop, Officers Kyle Thies and Clint Dee,

as well as the City of Des Moines Chief of Police, Dana Wingert, and the City of Des Moines, alleging claims under state and federal law for violation of his constitutional rights. The district court[1] granted summary judgment in favor of defendants and denied Saunders's request to certify questions to the Iowa Supreme Court and his motion for reconsideration. Having jurisdiction under 28 U.S.C. § 1291, we affirm the judgment of the district court.

I.

This case arises from the traffic stop Officers Thies and Dee performed on Saunders, a 29-year-old black man, shortly after midnight on July 8, 2018. Thies and Dee were traveling in a police transport van, driven by Thies, when Thies observed a vehicle make what he described as an "abrupt" turn that "didn't feel right." Despite the fact that they were in a police transport van, which is primarily used to transport individuals to the county jail, because the van did not have any individuals in it, Thies and Dee were acting in their general capacity as police officers. When serving in this capacity, Thies and Dee would periodically perform investigations or traffic stops. After observing the vehicle make the "abrupt" turn, Thies began following it; the vehicle ultimately made a right turn before coming to a stop on a residential street. Thies and Dee observed that the vehicle stopped directly in front of a fire hydrant in a marked no parking zone, and Thies parked the transport van in the middle of the street a couple of car lengths away from the vehicle. The officers did not activate the lights or sirens on the transport van at any point and did not otherwise indicate that they were initiating a traffic stop. Thies and Dee exited the transport van; neither Thies nor Dee contacted dispatch about the stop before they exited the van. However, Thies remarked to Dee that the vehicle was parked in front of a fire hydrant, and both officers approached the vehicle, with one on each side.

---

[1]The Honorable John A. Jarvey, Chief Judge, United States District Judge for the Southern District of Iowa, now retired.

Thies then made verbal contact with Saunders, the driver of the vehicle. Saunders had his driver's window lowered and was speaking on a cell phone. Thies did not immediately tell Saunders that he was parked illegally in front of a fire hydrant, instead asking Saunders if he was home. Saunders asked if there was a problem before responding that he was picking someone up from the residence he was parked in front of. Thies asked if the person he was picking up was coming out, and Saunders continued his phone call. While Thies waited as Saunders continued to talk on his phone, Thies heard a noise coming from the back of the vehicle and shined a flashlight into the backseat. Thies observed a small child in the back seat who was not in a booster seat,[2] as well as a closed bottle of liquor with a broken seal. When Saunders again asked Thies if there was a problem, Thies responded that Saunders was parked in front of a fire hydrant, had an open liquor bottle in the vehicle, and had a child in the back of the car who was not secured in a booster seat. Saunders told Thies that the vehicle belonged to his girlfriend, the liquor bottle was not his, and that he was dropping off the child, noting that it was an emergency. Saunders again asked Thies if there was a problem, and Thies again listed the three infractions he had observed. Thies asked Saunders for his driver's license and explained that he was "being stopped now." Saunders asked what he was being stopped for, and Thies again repeated the three infractions he had observed. Saunders replied that he was parked in front of a family member's house and stated that he already had an open case against the Des Moines Police Department for previous ill treatment that he had suffered from other officers. Thies again asked for Saunders's driver's license or identification, at which point Saunders produced his driver's license and his handgun permit. Saunders informed Thies that he had a handgun in the vehicle. Thies asked Saunders if he had been drinking, and Saunders stated that he had not.

---

[2]Under Iowa Code § 321.446, a child under six must be secured by "a child restraint system," which is defined as "a specially designed seating system, including a belt-positioning seat or a booster seat, that meets federal . . . standards." Thies referred to the requisite child restraint system as a "booster seat" throughout the encounter with Saunders.

Thies then asked Saunders to get out of the vehicle and walk to the back of the car. Thies told Saunders that he would not be placing Saunders in handcuffs and that Saunders "[wa]s not in any trouble," before stating, however, that Saunders was being detained for the three listed infractions Thies observed: a vehicle parked illegally in front of a fire hydrant, an open liquor bottle in the vehicle, and a child not in a booster seat. Thies also stated that, because Saunders had a gun in the vehicle, the officers wanted to talk to Saunders at the back of the vehicle. Thies stated that they wished to question Saunders further about whether he had been drinking out of the open liquor bottle. Saunders got out of the car, and Thies patted him down but did not handcuff him. Saunders and Thies walked to the back of the vehicle, where Dee was also standing. At roughly the same time Saunders got out of the car, the mother of the child arrived and removed the child from the car. Thies asked how old the child was, but Saunders responded that the child's age was irrelevant because Saunders had driven the child due to an emergency. Thies again asked Saunders if he had had anything to drink, and Saunders responded that if Thies wanted to test him for being under the influence, he could get testing equipment. Thies wanted to perform a field sobriety test based on Saunders's body language and his belief that Saunders's eyes showed that he was under the influence of some substance, although Dee later testified that he did not see any evidence that would indicate Saunders was impaired. Thies then returned to the transport van to run a check on Saunders's license and check for any outstanding warrants. Thies did not call dispatch at this time to report a traffic stop for any alleged violation.

When Thies returned from the van, he requested that Saunders submit to a field sobriety test; Saunders refused and stated that he would "rather blow," presumably meaning that he would rather take a preliminary breath test (PBT). Thies informed Saunders that the officers did not have a PBT machine with them but did not immediately call for dispatch to send another officer with a PBT machine. Instead, Thies inspected the interior of Saunders's vehicle for signs of marijuana or alcohol use. Thies retrieved the bottle of liquor and took note of the handgun under the driver's seat before performing a general search of the rest of the open interior and the dashboard compartments. During this time, Saunders remained behind the

-4-

vehicle with Dee. Saunders requested that Dee provide the badge numbers for both officers, which Dee agreed to do. Roughly two-and-a-half minutes after Saunders requested a PBT, Thies paused his search of the car, called dispatch, and requested that a PBT unit report to the scene. This was also when Thies reported the stop to dispatch for the first time. Thies then continued the search of Saunders's vehicle, again looked at the handgun under the driver's seat, and asked dispatch to run the serial number. After searching the car for signs of marijuana or liquor use and finding none, Thies returned to the transport van and began writing a citation for carrying an open liquor bottle.

While Thies was writing the citation, Dee asked Saunders if he had anything in his mouth; Saunders responded, "[W]hy would I have anything in my mouth?" When Dee attempted to explain that he was referring to chewing gum or chewing tobacco, Saunders told Dee not to talk to him. Saunders then voiced his opinion that he had been pulled over because of his race and the officers would not have approached his car if he had been white. Saunders then told Dee for a second time not to talk to him. After four-and-a-half minutes, a third officer arrived on the scene with a PBT unit, and, after obtaining Saunders's consent, performed the test. The results indicated that Saunders was not under the influence of alcohol. Upon conclusion of the test, Saunders asked Dee why the officers had initially walked up to his car; Dee responded that they approached the vehicle because Saunders was parked in front of a fire hydrant. Saunders also questioned why the transport van was following Saunders before he stopped, and Dee offered no explanation other than that the officers were just driving the transport van. By this point, Saunders's mother and brother had arrived on the scene. Thies engaged in a discussion with Saunders's brother about the age of the child that had been in the vehicle, but ultimately stated that the age of the child was irrelevant because he had decided not to cite Saunders for failing to secure the child in a booster seat. Ultimately, Thies issued a citation to Saunders for having an open liquor bottle in the vehicle, and Thies and Dee departed the scene without requiring Saunders to move his vehicle. The entire encounter lasted approximately 22 minutes and was recorded via the transport van's dash camera and Thies's and Dee's body cameras.

Saunders later filed this action in state court, alleging 11 claims against Thies, Dee, the City of Des Moines Chief of Police, Wingert, and the City of Des Moines. Against Thies and Dee, Saunders asserted claims under 42 U.S.C. § 1983 for unreasonable search and seizure in violation of the Fourth Amendment; unreasonable extension of a traffic stop in violation of the Fourth Amendment; racial profiling in violation of the Fourteenth Amendment; and conspiracy to violate his civil rights in violation of the Fourth, Fifth, and Fourteenth Amendments. Saunders also asserted a claim under 42 U.S.C. § 1985 against Thies and Dee for conspiracy to violate his civil rights in violation of the Fourth, Fifth, and Fourteenth Amendments. Under Iowa law, Saunders asserted claims against Thies and Dee for unreasonable search and seizure, unreasonable extension of the traffic stop, and a pretextual traffic stop, all in violation of Art. 1, § 8 of the Iowa Constitution; racial profiling in violation of Art. 1, § 6 of the Iowa Constitution; and conspiracy to violate civil rights in violation of Art. 1, §§ 6 and 8 of the Iowa Constitution. Finally, Saunders asserted claims under both § 1983 and Art. 1, §§ 6 and 8 of the Iowa Constitution against the Chief of Police and the City of Des Moines for deliberate indifference to policies, practices, customs, training, and supervision in violation of the Fourth, Fifth, and Fourteenth Amendments. After removal to federal court, defendants moved for summary judgment. While the summary judgment motion was pending, Saunders filed a motion to certify questions to the Iowa Supreme Court relating to the racial profiling claim asserted under the Iowa Constitution.

In a single order, the district court granted defendants' motion for summary judgment in part and denied Saunders's motion to certify questions to the Iowa Supreme Court. As to the claims under both the federal and state constitutions for unreasonable search and seizure, the district court concluded that the officers were entitled to qualified immunity under both federal and state law because Saunders failed to create a genuine issue of material fact as to whether an unreasonable search or seizure occurred when the undisputed facts showed that he voluntarily parked his vehicle, the officers observed him parked in front of a fire hydrant, Thies patted Saunders down after Saunders provided his handgun permit and stated that he had a firearm in the vehicle, and Thies had probable cause to search the vehicle based on

-6-

the presence of the open liquor bottle. As to the claim under the federal constitution for unreasonable extension of a traffic stop, the district court determined that the officers were entitled to qualified immunity because it was not clearly established that the failure to promptly request the assistance of another officer or the needed equipment before completing another task violated the Fourth Amendment. However, as to the analogous claim under the Iowa Constitution, the district court denied the officers qualified immunity, concluding that the Iowa qualified immunity analysis requires consideration of two questions: whether a constitutional violation occurred and whether the defendant took all reasonable actions to conform with the Iowa Constitution. As to the second prong, the district court concluded that, while the possibility was remote, a reasonable factfinder could determine that Thies and Dee failed to meet this standard.

As to the claims under the federal and state constitutions for racial profiling, the district court again determined that Thies and Dee were entitled to qualified immunity because Saunders failed to raise a genuine issue of material fact as to whether Thies and Dee exercised their discretion to enforce a law solely on the basis of Saunders's race, particularly where there was no record evidence demonstrating that Thies and Dee were aware of Saunders's race when they began following his vehicle. As to the §§ 1983 and 1985 conspiracy claims, the district court first determined that Thies and Dee were entitled to qualified immunity under federal law because Saunders failed to show any other constitutional violation, which is required to support a conspiracy claim under federal law. As to the conspiracy claim under Iowa law, however, the district court determined that, because it found that Thies and Dee were not entitled to qualified immunity on the claim under Iowa law for unreasonable extension of the traffic stop, Thies and Dee were not entitled to qualified immunity on the conspiracy claim because Saunders had a viable underlying constitutional claim. The district court also granted summary judgment in favor of Thies and Dee on Saunders's claim under the Iowa Constitution for a pretextual traffic stop after Saunders did not resist defendants' summary judgment motion on this claim.

As to the claims under both the federal and state constitutions against the Chief of Police and the City of Des Moines for deliberate indifference, the district court determined that, because Saunders failed to present any evidence of past violations of constitutional rights and failed to demonstrate that Saunders's encounter was a consequence of systemic failures, rather than the actions of individual officers, the Chief of Police and the City were entitled to summary judgment on these claims.

Finally, as to Saunders's request to certify questions to the Iowa Supreme Court regarding his claim under the Iowa Constitution for racial profiling, the district court denied the motion, concluding that its reasons for granting summary judgment to Thies and Dee on this count were unrelated to the proposed questions for the Iowa Supreme Court, rendering certification unnecessary. Saunders then filed a motion for reconsideration of his racial profiling claims, asserting that the district court applied an incorrect standard and incorrectly stated that the officers were not aware of Saunders's race before approaching his vehicle. Saunders also asserted that, should the district court correct its errors with respect to the state law racial profiling claim, it should also certify its question to the Iowa Supreme Court. The district court denied the motion. The district court then remanded the only remaining claims—the claims under the Iowa Constitution for unreasonable extension of a traffic stop and conspiracy—to state court. Saunders appeals.

II.

Saunders first asserts that the district court erred in granting summary judgment to defendants on his unreasonable seizure[3] claims under both federal and state law, the unreasonably prolonged stop claim under federal law, the racial profiling claims under both federal and state law, the conspiracy claim under federal law, and the deliberate indifference claims under federal and state law. He further

_____

[3]Saunders does not raise any argument on appeal related to the district court's grant of summary judgment to defendants on the unreasonable search claim.

-8-

asserts that the district court erred in denying his motion for reconsideration with respect to his racial profiling claims. "We review a district court's grant of summary judgment on the basis of qualified immunity de novo. We apply the same standard as the district court in assessing the facts: We view the record in the light most favorable to the nonmoving party . . . ." Ross v. City of Jackson, 897 F.3d 916, 920 (8th Cir. 2018) (citation omitted). Further, "[a] district court has wide discretion over whether to grant a motion for reconsideration of a prior order, and 'we will reverse a denial of a motion for reconsideration only for a clear abuse of discretion.'" SPV-LS, LLC v. Transamerica Life Ins. Co., 912 F.3d 1106, 1111 (8th Cir. 2019) (citations omitted). An abuse of discretion occurs "if the district court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions." Id. (citation omitted).

As an initial matter, with respect to Saunders's federal claims against Thies and Dee, "[i]n determining whether qualified immunity should apply, the court engages in a two-step inquiry. First, we must determine whether a constitutional right has been violated. Then, 'the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.'" Ross, 897 F.3d at 920 (citations omitted). Although we may address either step first, it is "often beneficial" to address the steps in sequential order. Id. (citation omitted) Similarly, qualified immunity under Iowa law involves a two-step inquiry: first, whether a state constitutional right has been violated and, second, whether the defendant exercised all due care to conform to the requirements of state law. See Venckus v. City of Iowa City, 930 N.W.2d 792, 802 (Iowa 2019). "'[E]xercising all due care to conform with the requirements of the law' imposes a greater burden on defendants than not violating 'clearly established . . . constitutional rights of which a reasonable person would have known.'" Baldwin v. Estherville, 333 F. Supp. 3d 817, 843 (N.D. Iowa 2018) (second alteration in original) (citing Baldwin v. City of Estherville, 915 N.W.2d 259, 279 (Iowa 2018)). With these frameworks in mind, we address each of Saunders's claims against Thies and Dee in turn.

A.

Saunders argues that the district court erred in granting summary judgment to Thies and Dee based on qualified immunity on his federal and state claims for an unreasonable seizure. Saunders asserts that the district court erred because fact questions exist regarding whether Thies and Dee unreasonably seized Saunders, particularly where the facts demonstrate that Thies and Dee seized Saunders from the moment they blocked his vehicle by pulling behind him on the residential street and they lacked reasonable suspicion to detain him.

"The Fourth Amendment protects against 'unreasonable searches and seizures,' and a traffic stop constitutes a seizure of the vehicle's occupants." United States v. Sanchez, 955 F.3d 669, 674 (8th Cir.), cert. denied, 141 S. Ct. 930 (2020) (citations omitted). To comply with the Fourth Amendment, "a traffic stop must be justified by 'reasonable suspicion . . . that criminal activity may be afoot.'" Id. (alteration in original) (citation omitted). "Reasonable suspicion requires 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" United States v. Shumaker, 21 F.4th 1007, 1017 (8th Cir. 2021) (citation omitted). Similarly, Article I, section 8 of the Iowa Constitution "guarantees the right to be secure against unreasonable searches and seizures, and it contains language nearly identical to the Fourth Amendment counterpart." State v. Salcedo, 935 N.W.2d 572, 577 (Iowa 2019). "[A] traffic stop, even if brief and for a limited purpose, is a seizure within the meaning of the Fourth Amendment. This seizure, consistent with the constitutional requirement, must be reasonable under the circumstances." Id. (citations omitted). Just as with the Fourth Amendment, under the Iowa Constitution, "as long as the officer has objectively reasonable cause to believe the motorist violated a traffic law," any subjective motivations on his part are irrelevant. State v. Haas, 930 N.W.2d 699, 702 (Iowa 2019) (per curiam); see also United States v. White, 928 F.3d 734, 740 (8th Cir. 2019) ("[T]he subjective intent of an officer cannot vitiate otherwise objectively reasonable conduct.").

First, to the extent that Saunders argues that he was seized from the moment the officers pulled up behind him after he turned on the residential street, we find his argument unavailing. The video recording of the incident shows that Saunders voluntarily stopped his car, Thies stopped the transport van several car lengths behind Saunders's vehicle, Thies never activated any sirens or lights, and Thies and Dee did not block Saunders's ability to leave prior to their initial verbal contact. On this record, we cannot conclude that Saunders was seized from the moment the officers pulled up behind him on the residential street. See Baude v. Leyshock, 23 F.4th 1065, 1071 (8th Cir. 2022) ("A Fourth Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority[.]" (citation omitted)); State v. Reinders, 690 N.W.2d 78, 82 (Iowa 2004) ("A seizure occurs when an officer by means of physical force or show of authority in some way restrains the liberty of a citizen." (citation omitted)).

Second, as to Saunders's argument that the stop was not supported by reasonable suspicion, we disagree. Under Iowa law, it is illegal to "stop, stand, or park a vehicle . . . [w]ithin five feet of a fire hydrant." Iowa Code § 321.358. The video recordings of the incident and the record evidence demonstrate that Thies and Dee observed Saunders bring his vehicle to a stop in a marked no parking zone directly across from a fire hydrant. Having witnessed this violation of Iowa law, the officers had reasonable suspicion to initiate a traffic stop of Saunders. See United States v. Adler, 590 F.3d 581, 583 (8th Cir. 2009) ("Any traffic violation, however minor, provides probable cause for a traffic stop." (citation omitted)); State v. Warren, 955 N.W.2d 848, 860 (Iowa 2021) ("Generally, police officers have probable cause to stop a motorist if they witness the motorist commit a traffic violation."). We thus find no violation under the federal or state constitution related to the traffic stop. Because Saunders failed to raise a genuine issue of material fact as to whether Thies and Dee unreasonably seized Saunders, Thies and Dee are entitled to qualified immunity under both federal and state law. The district court thus did not err in granting summary judgment to Thies and Dee on this basis.

B.

Saunders also argues that the district court erred in granting summary judgment to Thies and Dee based on qualified immunity on his federal claim for an unreasonably prolonged traffic stop. Saunders asserts that fact questions exist regarding whether Thies and Dee unreasonably prolonged the stop, particularly where the facts demonstrate that Thies and Dee did not pursue the purported purpose for the stop—Saunders being parked in front of a fire hydrant.

A traffic stop permissible under the Fourth Amendment "can become unlawful . . . 'if it is prolonged beyond the time reasonably required to complete' its purpose." United States v. Peralez, 526 F.3d 1115, 1119 (8th Cir. 2008). In conducting a traffic stop, "an officer may detain the occupants of a vehicle . . . 'while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation.'" United States v. Murillo-Salgado, 854 F.3d 407, 415 (8th Cir. 2017) (citation omitted). These tasks may include checking the identification of the vehicle's occupants, including their criminal history, checking the vehicle's registration and insurance, preparing the traffic citation, and asking the occupants general questions about their "destination, route, and purpose." Id. (citation omitted). Further, "[a]n officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered." United States v. Gastelum, 11 F.4th 898, 902 (8th Cir. 2021) (citation omitted), cert. denied, 2022 WL 1295716 (May 2, 2022). Determining whether the duration of a specific seizure is reasonable "is a fact-intensive question, and there is no *per se* time limit on all traffic stops. When there are complications in carrying out the traffic-related purposes of the stop, for example, police may reasonably detain a driver for a longer duration than when a stop is strictly routine." United States v. Olivera-Mendez, 484 F.3d 505, 510 (8th Cir. 2007).

The district court resolved the officers' entitlement to qualified immunity on the clearly established prong, concluding that it was not clearly established that the

-12-

failure of an officer to promptly request the assistance of another officer or necessary equipment before conducting other stop-related tasks is an unreasonable extension of a seizure. As to the constitutional violation prong, the district court concluded that a reasonable jury could find that Thies's delay of roughly two-and-a-half minutes between when Saunders requested a PBT and when Thies called dispatch to request the equipment unreasonably prolonged the traffic stop. We disagree with this conclusion and find the constitutional violation prong dispositive of this claim.

As discussed with respect to Saunders's claim for unreasonable seizure, Thies and Dee had reasonable suspicion to initiate the traffic stop based on their observation of Saunders's vehicle parked in front of the fire hydrant. Then, once Thies and Dee began engaging in the routine tasks of the traffic stop, the record demonstrates that a reasonable basis existed for Thies and Dee's suspicions of criminal activity to grow, namely, Thies's observation of an open liquor bottle in the vehicle and the child in the backseat who was not secured in a booster seat. This provided the officers with the reasonable suspicion necessary to investigate these infractions, particularly whether Saunders was operating the vehicle under the influence. See Murillo-Salgado, 854 F.3d at 415-16 (concluding that officer developed reasonable suspicion to warrant further investigation of criminal activity unrelated to reasons for initial traffic stop based on observations officer made while carrying out routine tasks of stop). Because Thies and Dee developed reasonable suspicion that further criminal activity was afoot, it is of no moment that Thies and Dee did not ultimately cite Saunders for being parked illegally in front of a fire hydrant.

Regarding the two-and-a-half minutes between when Saunders requested the PBT and when Thies contacted dispatch to request a PBT machine, we conclude that this delay did not unreasonably extend the duration of the traffic stop. This time span was short in duration, and Thies continued to perform investigative tasks during this time. The stop was still ongoing; the request for the PBT machine did not extend an otherwise already concluded stop. Given the foregoing, the two-and-a-half minute period between when Saunders requested a PBT and when Thies contacted

-13-

dispatch cannot alone support Saunders's claim that Thies and Dee unreasonably extended the duration of the traffic stop.

Finally, the entire duration of the traffic stop was roughly 22 minutes, and the video recordings demonstrate that the length of the traffic stop was, at least in part, based on the fact that Saunders was engaged in a phone conversation for a significant portion of the stop. See Olivera-Mendez, 484 F.3d at 510 (concluding that length of stop was not unreasonable and stating that routine "tasks took longer than normal because [the vehicle's driver] presented unusual circumstances"). Further, Thies and Dee concluded the traffic stop within five minutes after Saunders's PBT revealed that he was not under the influence of alcohol and immediately after Thies wrote the citation for traveling with an open liquor bottle in the vehicle. The video recording demonstrates that much of the five minutes between when the officers got the results of the PBT and concluded the stop was devoted to speaking to Saunders's family members who had arrived on the scene. Based on the facts and circumstances of this case, we conclude that Thies and Dee did not unreasonably extend the length of the traffic stop so as to amount to a violation of Saunders's Fourth Amendment rights. See Murillo-Salgado, 854 F.3d at 416 (concluding roughly 23-minute traffic stop was not unlawfully prolonged when officer asked permissible questions regarding purpose of trip and officer developed reasonable suspicion that further criminal activity was afoot based on occupants' responses to questions and officer's observations during this time). Because Saunders failed to raise a genuine issue of material fact as to whether Thies and Dee unreasonably prolonged the stop, the district court did not err in granting summary judgment on the basis of qualified immunity to Thies and Dee on this claim.

## C.

Next, Saunders asserts that the district court erred in granting summary judgment to Thies and Dee based on qualified immunity on his federal and state claims for racial profiling. Saunders contends that the district court erroneously construed the record to conclude that Thies and Dee were not aware of Saunders's

-14-

race before they initiated the encounter. Saunders also argues that the district court erred by requiring him to prove that the officers exercised their discretion to enforce a law solely on the basis of his race, rather than requiring him to prove that it was only a motivating factor in Thies and Dee's decisions. Saunders finally asserts that the district court also erroneously denied his motion for reconsideration based on these errors.

Saunders asserts his racial profiling claims under the Equal Protection Clause of the Fourteenth Amendment and Art. I, § 6 of the Iowa Constitution. The parties have not identified any authority, nor has this Court located any, suggesting that an equal protection claim would be analyzed under Iowa law differently than an equal protection claim under federal law. We therefore apply the federal standard to both Saunders's state and federal claims. See State v. Feregrino, 756 N.W.2d 700, 703 n.1 (Iowa 2008) (explaining that "ordinarily . . . where an argument that the Iowa Constitution should be construed differently than the United States Constitution is not presented, we assume for the purposes of the case that the provisions should be interpreted in an identical fashion"). "[T]he Constitution prohibits selective enforcement of the law based on considerations such as [race] . . . [and] the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause . . . ." Gilani v. Matthews, 843 F.3d 342, 347 (8th Cir. 2016) (first, third, fourth, and fifth alterations in original) (citation omitted). To prevail on an equal protection claim of selective enforcement, a plaintiff "must show both that the enforcement had a discriminatory effect, and that the enforcement was motivated by a discriminatory purpose." Id. at 348 (citation omitted). "[T]he plaintiff must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose." Clark v. Clark, 926 F.3d 972, 980 (8th Cir. 2019).

Saunders asserts that the record does not support the district court's determination that Thies and Dee were unaware of his race before they initiated the encounter with him by approaching his already stopped vehicle. Saunders asserts that, immediately before he made the turn that Thies deemed "abrupt" and which

resulted in Thies following him, the transport van pulled up next to Saunders, and Thies made eye contact with him. However, this claim is immaterial to our analysis as Saunders's evidence of purportedly similarly situated comparators does not meet his burden of showing discriminatory effect and purpose because the comparators that he offers are not similarly situated "in all relevant respects." Gilani, 843 F.3d at 348 (citation omitted) (concluding plaintiff and comparator offered to show selective enforcement were not similarly situated in all relevant respects because plaintiff matched description of a suspicious person report and no such report existed for comparator). Saunders offers body camera videos from five instances where Thies conducted traffic stops of black individuals and one instance where Thies conducted a traffic stop of white individuals as his evidence of the "requisite discriminatory effect and purpose." Clark, 926 F.3d at 980 (citation omitted). Although these videos perhaps demonstrate a general sense of how Thies treats motorists, none of these individuals are similarly situated to Saunders in all relevant respects. In each of these instances, Thies initiated a traffic stop of a moving vehicle, activated his lights, and did not issue a citation. Further, each of the instances differed in their circumstances, the questioning of the vehicle's occupants, and the investigation of different violations or offenses. These traffic stops differ from Saunders's stop to such an extent that they cannot be used as evidence of similarly situated comparators.

Finally, Saunders argues that the district court erred by applying an incorrect standard to his claim by requiring him to prove that Thies and Dee were motivated solely by race, rather than proving that they were motivated in part by race. Compare Clark, 926 F.3d at 980 ("To prove an equal protection claim in the context of a police interaction, [a plaintiff] must prove that the officer exercised his discretion to enforce a law *solely on the basis of race*." (emphasis added)), with United States v. Bell, 86 F.3d 820, 823 (8th Cir. 1996) ("To show discriminatory purpose, the claimant must show the official's decision to enforce the law was *at least partially based on race*." (emphasis added)). Because Saunders has failed to show that the officers were motivated in any part by Saunders's race, we need not conclusively resolve this issue to determine that Saunders failed to raise a genuine issue of material fact necessary

-16-

to defeat qualified immunity and summary judgment.  The district court thus did not err in granting summary judgment to Thies and Dee on these claims, nor did it abuse its discretion in denying Saunders's motion for reconsideration.  See SPV-LS, LLC, 912 F.3d at 1111 (providing that to find an abuse of discretion in motion for reconsideration, district court's judgment must be based on errors of fact or law).

D.

Saunders further argues that the district court erred in granting summary judgment to Thies and Dee based on qualified immunity on Saunders's §§ 1983 and 1985 conspiracy claims under federal law because fact questions exist regarding whether Thies and Dee were engaged in an agreement to violate Saunders's rights.[4] Saunders asserted conspiracy claims under both 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  For a § 1983 conspiracy claim against a particular officer, a plaintiff "must show that the officer 'conspired with others to deprive [the plaintiff] of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured [the plaintiff].'"  Kingsley v. Lawrence Cnty., 964 F.3d 690, 702 (8th Cir. 2020) (citation omitted).  Further, the plaintiff must "prove a deprivation of a constitutional right or

---

[4]The district court, in granting summary judgment on these claims, stated that it was doing so because it had "granted summary judgment on all of Saunders's federal claims against these officers on the ground that there was no constitutional violation."  R. Doc. 44, at 37.  However, this statement appears to be erroneous as, with respect to Saunders's federal claim for unreasonably prolonging the stop, the district court stated "[t]his case also presents circumstances warranting submitting to a jury the question of whether the stop was improperly prolonged beyond the time reasonably necessary to resolve all three possible violations. . . . A reasonable jury could find that, had Thies been reasonably diligent, he would have called for a PBT unit promptly, but he did not."  R. Doc. 44, at 29-30.  The district court thus resolved this claim on the clearly established prong of the qualified immunity analysis rather than the constitutional violation prong.  Although we note this apparent error, it is immaterial to our analysis of Saunders's conspiracy claims because, as stated in Part II.B, we conclude that Saunders failed to raise a genuine dispute of material fact as to whether an unconstitutionally prolonged stop occurred.

privilege in order to prevail on a § 1983 civil conspiracy claim." Id. For a § 1985 conspiracy claim, a plaintiff must show that defendants reached an agreement to violate the plaintiff's constitutional rights. Johnson v. Perdue, 862 F.3d 712, 717-18 (8th Cir. 2017). Just as with a § 1983 conspiracy claim, "[a]bsent a constitutional violation, 'there is no actionable conspiracy claim.'" In re Kemp, 894 F.3d 900, 910 (8th Cir. 2018) (citation omitted). For the reasons discussed previously, Saunders failed to raise a genuine issue of material fact as to whether a violation of his federal constitutional rights occurred in his other claims against Thies and Dee. In the absence of an underlying constitutional violation, Saunders's § 1983 and § 1985 conspiracy claims necessarily fail. The district court thus did not err in granting summary judgment to defendants based on qualified immunity.

E.

Finally, Saunders asserts that the district court erred in granting summary judgment to the Chief of Police and the City on his federal and state claims for deliberate indifference to policies, practices, customs, training, and supervision that violate the Fourth, Fifth, and Fourteenth Amendments. Saunders argues that the record demonstrates that Thies had a pattern of targeting black motorists, and both the Chief of Police and the City are liable for showing deliberate indifference to the policies, practices, customs, training, and supervision of the officers under their purview, which resulted in the violation of his constitutional rights.

As to the federal claim for deliberate indifference, our "circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim. Similarly, to maintain an action for training or supervisory liability, a plaintiff must show the failure to train or supervise caused the injury." Moore v. City of Desloge, 647 F.3d 841, 849 (8th Cir. 2011). Because Saunders failed to show that Thies and Dee violated his constitutional rights, Saunders cannot maintain this claim against either the City or the Chief of Police. See id.

Although Saunders's federal claim is resolved by the absence of an underlying violation of his federal constitutional rights, the analysis of his analogous claim under the Iowa Constitution requires additional consideration because the district court determined that Saunders's claims under the Iowa Constitution for unreasonable extension of the stop and conspiracy survived summary judgment. Therefore, Saunders's claim under the Iowa Constitution does not fail for the lack of a viable, underlying substantive claim.

The parties have not presented any authority, nor have we discovered any, suggesting that Iowa courts would interpret a deliberate indifference claim under the Iowa Constitution any differently than federal courts would under federal law. Accordingly, we apply federal law to Saunders's claim under the Iowa Constitution. See Feregrino, 756 N.W.2d 700, 703 n.1  Under federal standards, "[a] municipality may be liable under § 1983 where 'action pursuant to official municipal policy of some nature caused a constitutional tort.'"  Graham v. Barnette, 5 F.4th 872, 890 (8th Cir. 2021) (citation omitted).  And "a 'pattern of similar constitutional violations' is 'ordinarily necessary' to establish municipal liability."  Id. at 891 (quoting Connick v. Thompson, 563 U.S. 51, 62 (2011)).  However, this showing is not required if "'the need for more or different training is so obvious and the inadequacy [is] so likely to result in the violation of constitutional rights' that the municipality can be said to have been 'deliberatively indifferent to the need.'"  Id. (alteration in original) (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989)). As to supervisor liability, "supervisors . . . are liable under § 1983 for a subordinate's violation of a third person's constitutional right only if their deliberate indifference to the offensive conduct and failure to take adequate remedial action proximately caused the injury."  Cox v. Sugg, 484 F.3d 1062, 1066 (8th Cir. 2007).  But "[d]eliberate indifference is a 'stringent standard of fault,'" requiring "proof of *reckless disregard* of a risk of constitutional harm."  Id.

Saunders's evidence of the purported deliberate indifference of both the City and the Chief of Police falls far short of this standard; Saunders has presented no evidence of past violations of the rights in question, nor has he presented evidence

that the facts of the traffic stop were "so obviously" the consequence of a systemic lack of training or supervision so as to amount to deliberate indifference to unconstitutional policies, practices, customs, training, and supervision. Although Saunders purports to provide evidence of comparator cases showing that Thies has a pattern of mistreating black motorists, each of these cases involved different traffic violations and different circumstances so as to render us unable to discern whether they represent a pattern or practice.[5] See Gilani, 843 F.3d at 348 (discussing need for comparators to be similarly situated in all relevant respects for claim of selective enforcement of traffic law). The record here simply presents no evidence of deliberate indifference to systemic issues; rather, as the district court noted, the record demonstrates only that the decisions made here were made individually by specific officers. For these reasons, Saunders failed to show a genuine issue of material fact as to whether the need for additional training and any inadequacies were so obvious that the municipality can be deemed deliberately indifferent, see Graham, 5 F.4th at 891, and has similarly failed to create a factual dispute as to whether the Police Chief acted with "*reckless disregard* of a risk of constitutional harm," Cox, 484 F.3d at 1066. The district court thus did not err in granting summary judgment in favor of the City and Chief of Police on the deliberate indifference claims under either federal or Iowa law.

## III.

Saunders further asserts that the district court erred in declining to certify questions to the Iowa Supreme Court regarding his claim under the Iowa Constitution for racial profiling. "We review a district court's decision regarding whether to certify a question of law to the appropriate state court under the abuse of discretion standard." Anderson v. Hess Corp., 649 F.3d 891, 895 (8th Cir. 2011).

---

[5]As stated with respect to the racial profiling claim, the other cases that Saunders identifies as comparators involve situations where Thies initiated a traffic stop of a moving vehicle by activating his lights, Thies did not issue the driver citations, and the underlying circumstances of the stop differed markedly from Thies's stop of Saunders.

And, as stated above, we similarly review the denial of a motion for reconsideration for abuse of discretion. SPV-LS, LLC, 912 F.3d at 1111.

The decision whether to certify a question to a state supreme court "is by no means 'obligatory' merely because state law is unsettled; the choice instead rests 'in the sound discretion of the federal court.'" McKesson v. Doe, 141 S. Ct. 48, 51 (2020) (per curiam). As the Supreme Court has cautioned, "state certification procedures . . . can prolong the dispute and increase the expenses incurred by the parties," and "[o]ur system of 'cooperative judicial federalism' presumes federal and state courts alike are competent to apply federal and state law." Id.

Saunders sought to certify the following questions to the Iowa Supreme Court regarding his racial profiling claim, which was rooted in the Equal Protection Clause of the Iowa Constitution:

- What are the standards for a racially-biased policing claim under the Iowa Equal Protection Clause?

- When there is evidence showing that an officer pretextually engaged the plaintiff after considering his race, and that the officer has a pattern of illegally stopping others of the same race, must a plaintiff bringing a racially-biased policing claim under the Iowa Equal Protection Clause also produce evidence showing that similarly situated individuals of a different race were not treated the same?

We agree with the district court that the answers to these questions are unnecessary to resolve Saunders's racial profiling claim. Relying on sources he claims suggest the Iowa Constitution may provide a more lenient standard for equal protection claims than the federal constitution, Saunders asserts that, to correctly consider his claim, the Iowa Supreme Court must weigh in on the proper standards for evaluating such a claim. However, the Iowa Supreme Court has previously stated that "prudential concerns ordinarily mean that where an argument that the Iowa Constitution should be construed differently than the United States Constitution is not presented, we assume for the purposes of the case that the provisions should be

interpreted in an identical fashion." <u>Feregrino</u>, 756 N.W.2d at 703 n.1. Given this "assumption" that the federal and state constitutions should be interpreted in "an identical fashion," and given the deferential standard of review that applies to review of a motion to certify questions to a state court, we see no error in the district court's denial of this motion. For these reasons, the district court did not abuse its discretion in denying Saunders's motion to certify questions to the Iowa Supreme Court or in denying Saunders's subsequent motion to reconsider.

## IV.

For the foregoing reasons, we affirm the judgment of the district court.

_____