# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1119

_____

*Plaintiff* A, by his natural mother and general guardian, Parent A;
*Plaintiff* B, by his natural father and general guardian, Parent B;
*Plaintiff* C, by his natural mother and general guardian, Parent C;
*Plaintiff* D, by his natural father and general guardian, Parent D

*Plaintiffs - Appellants*

v.

Park Hill School District; Janice Bolin, President and Member, Park Hill School District Board of Education; Bart Klein, Vice President and Member, Park Hill School District Board of Education; Kimberley Ried, Treasurer and Member, Park Hill School District Board of Education; Todd Fane, Member, Park Hill School District Board of Education; Scott Monsees, Member, Park Hill School District Board of Education; Susan Newburger, Member, Park Hill School District Board of Education; Brandy Woodley, Member, Park Hill School District Board of Education; Jeanette Cowherd, Superintendent of Schools, Park Hill School District; Josh Colvin, Director of Student Services, Park Hill School District; Kerrie Herren, Principal, Park Hill South High School

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri

_____

Submitted: December 14, 2023
Filed: April 2, 2024

_____

Before SMITH,[1] Chief Judge, GRUENDER and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

As a part of an ill-advised "joke," a ninth-grade boy at Park Hill High School created an online petition calling for the return of slavery. Three other students posted online comments favoring the petition. After the Park Hill School District (the School District) expelled or suspended the four students, they sued, claiming the School District violated their rights to equal protection and due process. The district court[2] denied these claims on summary judgment. The four students appeal, and we affirm the district court.

## I. Background

Plaintiffs A, B, C, and D (collectively, Plaintiffs) were ninth-grade students on the football team at Park Hill High School (PHS), in Kansas City, Missouri. On September 16, 2021, they were traveling with the team to an away game. While en route, Plaintiff A, a biracial black and Brazilian student, published a petition online titled "Start Slavery Again"; he then circulated the petition to other members of the team through Snapchat. Plaintiff B, a white student, commented "I love slavery." Plaintiff C, a white student, commented "i hate blacks." Plaintiff D, a biracial Asian and white student, commented "I want a slave." The petition included a picture of TRL, a black student.

_____

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

[2]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

The next day, PHS's Assistant Principal, Melvin Walker, investigated the incident. Walker spoke with Plaintiffs and determined they violated the School District's policies. The discipline notice stated violations of the following four school policies: Cellphone/Electronic Device, Disorderly Conduct, Disruptive Behavior, and Harassment. Plaintiffs' written statements noted they were "joking around" and "thought it would be funny." Plaintiffs B, C, and D explicitly noted they regretted their actions. Walker suspended Plaintiffs for ten days, and recommended extended-term suspensions or expulsions. That evening, PHS's Principal, Kerrie Herren, emailed PHS families. In that email, he condemned the racist statements and assured families that "we will not tolerate discrimination or harassment."

On Monday, September 20, Principal Herren sent letters to each of the Plaintiffs' parents, informing them of the ten-day suspensions and of his recommendations to the School District's Superintendent for extended-term suspensions or expulsions. The next day, the School District notified Plaintiffs' parents that it would hold disciplinary conferences on October 1, and gave the parents a procedural outline and a "Notice of Charges." The Notice of Charges—much like the ones Plaintiffs received—stated the discipline was due to "Harassment, Disruptive Behavior, Disorderly Conduct, Cell Phone/Electronic Device [Use]" in violation of school policies.

The following day, the School District's Superintendent, Jeanette Cowherd, emailed a letter to the community, condemning the petition, supporting the Principal's actions, and committing to following school policy. An onslaught of media attention followed, and the School District received calls from parents, students, community members, alumni, and others across the country, expressing concerns about the petition.

On October 1, the School District held disciplinary conferences with Plaintiffs and their parents. Superintendent Cowherd and Student Services Director Josh Colvin agreed that Plaintiff A should be suspended for 170 days, or the remainder

of his freshman year, and further recommended to the School Board that Plaintiff A should be expelled. Cowherd and Colvin agreed that Plaintiffs B, C, and D should be suspended for 170 days. In making their decisions, the administrators compared the situation to other incidents where students were expelled. The first involved a student writing racist and threatening graffiti on school bathroom walls. The second involved a student drawing swastikas on school bathroom walls. Plaintiffs administratively appealed their punishments.

On November 3, the School District held an administrative appeal hearing with Plaintiffs, their parents, and their legal counsel. Plaintiffs were allowed to call and cross-examine witnesses. This hearing lasted from 5:00 p.m. until 3:00 a.m. The School District ultimately expelled Plaintiff A, and required Plaintiffs B, C, and D to undergo ten hours of diversity and inclusion training before they could return to PHS for the 2022–23 school year.

On November 12, Plaintiffs sued the School District, the PHS Principal, and various school board members (collectively, the Defendants) in federal court, asserting various claims under 42 U.S.C. § 1983. After voluntarily dismissing two of those claims, Plaintiffs proceeded to summary judgment on their due process and equal protection claims. Plaintiffs claimed the disciplinary procedures deprived them of substantive and procedural due process. They also claimed the Defendants deprived Plaintiffs of equal protection because they did not punish TRL—the black student whose photo was used on the petition—even though Plaintiffs claimed he was a willing participant in creating the petition. The district court granted summary judgement for the School District, dismissing the Plaintiffs' procedural due process, substantive due process, and equal protection claims.

## II. Analysis

"We review the grant of a summary judgment de novo, viewing the evidence in light most favorable to [the Plaintiffs] as the nonmoving part[ies] and drawing all reasonable inferences in [their] favor." *Onyiah v. St. Cloud State Univ.*,

-4-

5 F.4th 926, 930 (8th Cir. 2021). Summary judgment in favor of the Defendants is warranted "if the movant[s] show[] that there is no genuine dispute as to any material fact and the movant[s] are entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A. Procedural Due Process Claims

"[A] student's legitimate entitlement to a public education [is] a property interest . . . protected by the Due Process Clause." *Goss v. Lopez*, 419 U.S. 565, 574 (1975). A school district must provide students facing a temporary suspension of ten days or less notice and an opportunity to be heard. *See id.* at 581. Specifically, the student must "be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* But "[l]onger suspensions or expulsions . . . may require more formal procedures." *Id.* at 584 (cautioning the notice-and-hearing requirements only pertain to "short suspension[s], not exceeding 10 days").

Since *Goss*, the Supreme Court has not addressed whether due process requires additional formal procedures for longer suspensions or expulsions. Instead, courts "have applied the balancing test from *Mathews v. Eldridge*, 424 U.S. 319 [ ] (1976), to determine what additional process may be due." *Doe ex rel. Doe v. Todd Cnty. Sch. Dist.*, 625 F.3d 459, 462–63 (8th Cir. 2010).

Under *Mathews*, courts balance three factors to determine the required procedural protections: (1) the private interest affected by the official action; (2) "the risk of an erroneous deprivation of such interest through the procedures used" and the probable value of additional procedure safeguards; and (3) the government's interest, "including the fiscal or administrative burdens" of additional procedures. *Mathews*, 424 U.S. at 321. *See also Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1240 (10th Cir. 2001) ("The three-factor test from the *Mathews* decision, decided one year after *Goss*, is appropriate for determining when additional procedure is due

because the test crystallizes the balancing of student interests against school interests suggested in the *Goss* decision.").

Applying *Mathews*' balancing test here suggests a low risk of an erroneous deprivation of Plaintiffs' interest because Plaintiffs received adequate notice and meaningful opportunities to be heard at every stage of the disciplinary process, and additional procedures unduly burden the School District. *See Mathews*, 424 U.S. at 321.

First of all, Plaintiffs were sufficiently notified of "what [they were] accused of doing and what the basis of the accusation [was]." *Goss*, 419 U.S. at 582. Plaintiffs and their parents were notified about the initial ten-day suspension; they were notified about Principal Herren's recommendation of extended-term suspension or expulsion; they were notified about the upcoming disciplinary conferences; and they were given a written notice of charges ten days before the disciplinary conferences.

Additionally, Plaintiffs received multiple opportunities "to explain [their] version of the facts." *See id.* The day after the incident, Plaintiffs had the opportunity to recount their versions of the events at their initial meetings with Assistant Principal Walker. During those meetings, Plaintiffs were provided with explanations of why their behaviors resulted in specific violations. Each plaintiff had an opportunity to tell his version of events—each plaintiff provided a written statement to PHS administration about his admitted involvement in the incident. *See Keefe v. Adams*, 840 F.3d 523, 535 (8th Cir. 2016) (concluding school complied with due process requirements when a school official "met with [the student], informed him that there were concerns regarding his Facebook, read from the posts of greatest concern, explained that his posts implicated the professionalism and professional boundary requirements of the [program], and gave him an opportunity to respond").

Beyond the initial meetings, Plaintiffs had opportunities to respond to the decision makers during the October 2021 disciplinary conferences and even opportunities to appeal the adverse decisions at the November administrative appeal hearings with legal counsel present. *See London v. Dirs. of DeWitt Pub. Schs.*, 194 F.3d 873, 874, 877 (8th Cir. 1999) (holding middle school student's expulsion not a due process violation where student's mother was informed of grounds upon which expulsion recommendation was based and where student was given hearing where he was represented by counsel who had full opportunity to examine and cross-examine witnesses).

In light of the above, Plaintiffs' procedural due process claim fails. Plaintiffs had fair notice and meaningful opportunity to present their case in the school disciplinary proceedings.

## B. Substantive Due Process

To prove a violation of substantive due process rights, Plaintiffs must show a government violation of a fundamental constitutional right so egregious that it shocks the contemporary conscience. *C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010). *Accord Keefe*, 840 F.3d at 533. Because the right to a public education is a property interest, and not a fundamental right, *Goss*, 419 U.S. at 574, Plaintiffs "must show that there was no rational basis for the [school's] decision or that the decision was motivated by bad faith or ill will." *Disesa v. St. Louis Cmty. Coll.*, 79 F.3d 92, 95 (8th Cir. 1996).

Plaintiffs have not met this burden. Long-term suspensions and expulsions are routine disciplinary actions that generally do not "offend . . . notions of fairness or human dignity." *Costello v. Mitchell Pub. Sch. Dist. 79*, 266 F.3d 916, 921 (8th Cir. 2001); *cf. Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1071, 1075–76 (11th Cir. 2000) (Excessive corporal punishment found to shock the conscience where a coach intentionally struck a student with a metal weight lock, knocking the student's eye out of its socket.).

The undisputed evidence shows there was a rational basis for the School District's disciplinary decisions. The petition and its fallout drew national news-media attention and caused disruptions in the school environment. Defendants decided additional punishment, beyond a short suspension, was needed to address the magnitude of Plaintiffs' disruption. There is no indication the disciplinary decisions were motivated by bad faith or ill will.

Defendants' chosen punishments simply do not make for a substantive due process violation. In light of the disruption and violation of the School District's policies, all of which occurred during a school event, the disciplinary actions were rationally related to its legitimate purpose of maintaining order. *See Wise v. Pea Ridge Sch. Dist.*, 855 F.2d 560, 566 (8th Cir. 1988) (noting school district has "legitimate interest in maintaining order and discipline in its schools"). Thus, we reject Plaintiffs' substantive due process claim.

## C. Equal Protection

Finally, we turn to Plaintiffs' claim of an equal protection violation. "The Equal Protection Clause generally requires the government to treat similarly situated people alike." *Klinger v. Dep't of Corrs.*, 31 F.3d 727, 731 (8th Cir. 1994). "[T]he first step in an equal protection case is determining whether the plaintiff has demonstrated that [he] was treated differently than [comparators] who were similarly situated to [him]." *Id.* Plaintiffs and their comparators must be similarly situated "in all relevant respects." *Saunders v. Thies*, 38 F.4th 701, 714 (8th Cir. 2022) (quoting *Gilani v. Matthews*, 843 F.3d 342, 348 (8th Cir. 2016)).

Plaintiffs sought to compare their situations to TRL. According to Plaintiffs, TRL also participated in the creation, approval, and posting of the petition and yet faced no discipline. Plaintiffs argue this shows the School District violated the Equal Protection Clause. Even assuming Plaintiffs' version of TRL's involvement in the incident is true, TRL was still not similarly situated to Plaintiffs. Whereas each of the Plaintiffs either created the petition or made racist electronic statements when

commenting on the post, TRL's alleged involvement was limited; he did not create the petition—as Plaintiff A did, nor did he make any posts—as Plaintiffs B, C, and D did.

Plaintiffs also failed to present evidence that the School District's decision to punish Plaintiffs, but not TRL, was racially motivated. Plaintiffs noted that in 2018, the school administration took steps to address the racial disparity in suspensions and adopted a policy to "support our students in a way that they are not being suspended." Plaintiffs claim the School District implemented a policy of treating black students more leniently than white students to even out the statistical disparities in suspensions. But nothing in the evidence suggests such a practice happened here, as TRL's and Plaintiffs' participation in the incident were materially different. Plaintiffs' mere suspicion is not sufficient to defeat summary judgment. *See Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) ("Mere allegations, unsupported by . . . evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment.").

We reject Plaintiffs' equal protection claim because we find no evidence supporting the contention that Plaintiffs were similarly situated with TRL, given Plaintiffs' greater involvement in creating and supporting the petition.

### III. Conclusion

For the foregoing reasons, we affirm the district court.

_____