# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Thursday the 18th day of July, 2024.*

Present: Goodwyn, C.J., Powell, Kelsey, McCullough, Russell, and Mann, JJ.

PAUL RAMSEY WHITE, III,                                                                    PETITIONER,

 against            Record No. 240105

CHADWICK DOTSON, DIRECTOR,
 VIRGINIA DEPARTMENT OF CORRECTIONS,                                    RESPONDENT.

UPON A PETITION FOR A WRIT OF HABEAS CORPUS

Upon consideration of the petition for a writ of habeas corpus filed February 9, 2024, the rule to show cause, the respondent's motion to dismiss, and petitioner's reply, the Court is of the opinion that the motion should be granted and the petition should be dismissed.

Petitioner is in the custody of the Virginia Department of Corrections ("VDOC") serving an active sentence of nine years' imprisonment. Petitioner challenges VDOC's failure to use the date of his arrest on one of the charges that predicates his current incarceration as the starting point for his accrual of Earned Sentence Credit ("ESC"). Petitioner explains that instead of using the date of his arrest, a VDOC policy uses a date well after his arrest as the starting point for his accrual of ESC at the rates set by Code § 53.1-202.3(B),[1] thus wrongly withholding a significant amount of ESC from him.

In his petition, petitioner contends that several statutory provisions demonstrate he is entitled to ESC under Code § 53.1-202.3(B), at a rate of fifteen days for every thirty days served, beginning on the date of his arrest. Petitioner points primarily to the fact that, when Code § 53.1-202.3(B) became effective in July 2022, it was made "'retroactive[] to the entire sentence of any person who is confined in a state correctional facility and participating in the [ESC] system on July 1, 2022.'" *Anderson v. Clarke*, 302 Va. 400, 405-06 (2023) (quoting 2020 Acts

---

[1] VDOC uses an inmate's Custody Responsibility Date ("CRD") as the date from which an inmate is eligible to earn ESC at the statutorily prescribed rates set by Code § 53.1-202.3(B). An inmate's CRD is "the date on which the inmate becomes state responsible whether located in a jail or a [V]DOC institution."

ch. 50 (Spec. Sess. I)). Further, petitioner relies on his interpretation of portions of Code §§ 53.1-116, -187, and -202.2(A) to bolster his contention that he is statutorily entitled to ESC from the date of his arrest.

The Court rejects petitioner's claim because the plain language of Code § 53.1-202.2(A) reveals petitioner's eligibility to earn ESC under Code § 53.1-202.3(B) did not begin upon his arrest. The issue raised by petitioner is, in essence, one of statutory interpretation. The Court is bound by a statute's plain language unless that language is ambiguous or applying it would lead to an absurd result. *Morgan v. Commonwealth*, 301 Va. 476, 482 (2022). Also, when interpreting a statute, the Court's primary objective is to determine and effectuate the General Assembly's intent as it is expressed through the language of the operative statute. *See Commonwealth v. Delaune*, 302 Va. 644, 655 (2023).

The operative statute is Code § 53.1-202.2, which is titled "Eligibility for earned sentence credits." As it has since its initial codification approximately three decades ago, Code § 53.1-202.2(A) defines who "shall be eligible to earn" ESC under Code § 53.1-202.3; it extends that eligibility to persons convicted of a qualifying felony offense and "sentenced to serve a term of incarceration in a state or local correctional facility." The subsection then provides that "[s]uch eligibility shall commence upon the person's incarceration in any correctional facility following entry of a final order of conviction by the committing court."

Accordingly, contrary to petitioner's contentions, Code § 53.1-202.2(A) dictates that a prisoner qualifies to start earning ESC upon his sentencing to serve a term of incarceration for a qualifying felony and his incarceration following a final order of the committing court. Petitioner does not contend he met, nor did he meet, those criteria on the date of his arrest, November 21, 2017.

The nine-year sentence petitioner is currently satisfying is based on a March 23, 2020 order sentencing petitioner to twenty years' imprisonment with twelve years suspended and an October 6, 2020 order revoking petitioner's previously suspended eleven-year sentence and resuspending all but one year. *See* Code § 53.1-186 ("For the purpose of determining allowances for good conduct, the term of confinement of a person convicted of a felony and sentenced to the Department whose sentence is partially suspended shall be that portion of the sentence which was not suspended."). Accordingly, petitioner fails to establish that VDOC has transgressed any statutory directives by ignoring the date of his arrest when calculating his ESC. There is no

statutory support for the contention that petitioner is entitled to ESC under § 53.1-202.3(B) from the date of his arrest.

In other portions of his petition, petitioner contends that VDOC has violated his constitutional right to due process by not granting him ESC under Code § 53.1-202.3(B) from the date of his arrest.[2] The Court rejects this claim. As explained above, petitioner has not demonstrated he is statutorily entitled to the additional ESC he demands. *See Anderson*, 302 Va. at 415-16 (explaining that habeas petitioner's due process claim failed, in part, because he did not have a "cognizable interest" in the additional ESC he argued he was wrongly denied). Nor does petitioner have a constitutionally based right to receive sentencing credit, like ESC, for his good behavior while incarcerated. *See id.* at 415 ("[T]he United States Supreme Court recognized that . . . the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.") (internal quotation marks omitted).

Accordingly, petitioner's invocation of due process protections fails because he has not established a deprivation of a legitimate, protected interest in his life, liberty, or property. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) (due "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); *see also Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) ("Merely labeling a governmental action as arbitrary and capricious, in the absence of the deprivation of life, liberty, or property, will not support a substantive due process claim."); *Hawkins v. Freeman*, 195 F.3d 732, 750 (4th Cir. 1999) ("Nor . . . can liberty interests protected by the substantive component of the due process clause be found except in the Constitution itself; they cannot be created by state law.").

In other portions of his petition, petitioner contends the VDOC's failure to grant him ESC under Code § 53.1-202.3(B) from the date of his arrest violates his constitutional right to equal protection of the laws. Petitioner argues that the manner in which the VDOC determines when a

---

[2] Although petitioner summarily invokes the "Virginia Constitution," he "does not reference or cite any Virginia cases or other authorities interpreting" the Virginia Constitution and he "does not offer any comment or argument regarding [its] adoption." *Anderson*, 302 Va. at 413 n.8. Accordingly, for the purposes of resolving this case, we assume without deciding that the due process and equal protection guarantees of the Virginia Constitution are no greater than those of the federal constitution. *Id*.

prisoner begins earning ESC, at Code § 53.1-202.3(B)'s rates, disproportionately disadvantages prisoners, like him, whose criminal proceedings are relatively prolonged due to their exercising protected trial rights or circumstances beyond their control.

The Court rejects this claim because petitioner has not alleged facts demonstrating that VDOC's facially neutral practices have "treated [him] differently than others similarly situated as a result of intentional or purposeful discrimination." *Reynolds v. Quiros*, 990 F.3d 286, 300 (2d Cir. 2021) (internal quotation marks omitted); *see also Green Genie, Inc. v. City of Detroit*, 63 F.4th 521, 527 (6th Cir. 2023) (describing as "a bedrock background principle of equal protection law: the unequal application of a facially neutral law is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination") (internal quotation marks omitted); *Plaintiff A v. Park Hill Sch. Dist.*, 97 F.4th 586, 592 (8th Cir. 2024) ("Plaintiffs and their comparators must be similarly situated in all relevant respects.") (internal quotation marks omitted).

Accordingly, the petition is dismissed and the rule is discharged.

This order shall be published in the Virginia Reports and certified to the petitioner and counsel for the respondent.

A Copy,

Teste:

Clerk